W. STIX FRIEDMAN, AUGUSTUS VAN L. BROKAW, ELMER G. SAMISH, ARTHUR W. ACKERMAN, CO-PARTNERS DOING BUSINESS UNDER THE NAME OF FRIEDMAN, BROKAW & SAMISH, APPELLANTS, v. LOUIS SCHNEIDER, RESPONDENT.—186 S. W. (2d) 204.

St. Louis Court of Appeals. Opinion filed March 6, 1945.

Respondent's Motion for Rehearing Overruled, Opinion filed, April 4, 1945.

*Lowenhaupt, Waite, Chasn'off & Stolar* and *Martin Stolar* for appellants.

780

*Albert E. Hausman* for respondent.

HUGHES, P. J.—This is an appeal by plaintiffs from a judgment against them in an action for money had and received. The case was tried to the court, without the intervention of a jury.

From the evidence it appears that sometime prior to December 30, 1942, defendant Schneider, a real estate broker, received from a client a bond issued by the United Public Utilities Company, a New Jersey corporation, with the request that he sell it for the client. The bond in question had a face value of $500. It was payable to bearer, and was one of a series secured by a mortgage upon the corporate property of said corporation.

Defendant was not familiar with the marketing of such securities, and had no knowledge or information concerning its value. Thereafter someone in defendant's office telephoned Charles L. Kuhlmann, who is in the investment business, and requested him to make a bid on the bond. Kuhlmann, likewise, was unfamiliar with the status or value of the bond. He thereupon called a Mr. Moss, an employee of plaintiffs, and Moss told him that the bond itself was worth about fifty cents on the dollar, but that back interest for nine or ten years at 5%, then due and unpaid, was probably collectible. Kuhlmann relayed this information to defendant. A few days later, in a telephone conversation, Moss stated to Kuhlmann that he was still interested in the bond, but would like to see it. Kuhlmann thereupon secured the bond from defendant's office, and took it to Moss, who said that it was the bond he was bidding on. Kuhlmann then returned the bond to defendant's office. Several days later, defendant asked Kuhlmann if plaintiffs were still interested in buying the bond, and upon telephone inquiry, Moss told Kuhlmann that plaintiffs were interested in buying the bond at approximately $475. Kuhlmann thereupon again took the bond to Moss, and at the time told Moss that he had known defendant for six or seven years. Moss kept the bond, and requested Kuhlmann to come back the next day for the check. The next day Moss delivered to Kuhlmann a check in the sum of $489.75 for the purchase price, payable to defendant. Upon delivery of the check to defendant, defendant deposited it in his own bank account, and remitted the amount thereof to his client.

Moss testified that before purchasing the bond, he checked Moody's Service and Capital Quotations, which indicated that the bond was to be exchanged or had been exchanged for various new securities, and was a valid obligation of the debtor company, and had a definite value. He stated that he retained the bond, after it had been delivered to him by Kuhlmann, in order to verify the amount of interest which had accrued on the new securities, so as to arrive at a proper figure to be paid defendant for the bond.

Plaintiffs then sent the bond to the City National Bank and Trust Company of Chicago, to be exchanged for the new securities which the Moody's manual had indicated were to be issued in place of it.

The bank returned the bond with the notation that the time limit had expired. Plaintiffs then wrote to Mr. Samuel W. White, President of the United Public Utilities Corporation, for information with respect to the matter, and received the following reply:

"United Public Utilities Corporation
"902 Market Street      Wilmington, Delaware
"Chicago Office
"20 North Wacker Drive

"Chicago   January 12, 1943

"Friedman, Brokaw & Samish,
"711 St. Charles Street
"Saint Louis, Mo.

"Att.: Mr. M. M. Moss

"Gentlemen:

"Replying to your letter of January 11th, City National Bank & Trust Company of Chicago was appointed as Agent of the Federal Court to effect the exchanges of securities under the Plan of Reorganization of United Public Utilities Company, which was consummated December 31, 1934.

"For 6½ years, this Corporation made vigorous efforts to promote the exchange of outstanding securities of the Old Company. Last year, the Federal Court entered an order directing further exchanges to be stopped and ordering this Corporation to insert advertisements in certain New York, Chicago and Pacific Coast newspapers on two specific advance dates, notifying all holders that the right to exchange would shortly be terminated. The final date on which exchanges could be effected was August 25, 1941, and, by direction of the Court, the nominal amount of the Corporation's securities remaining in the hands of the Exchange Agent were thereupon cancelled.

"At no time has this Corporation been authorized by the Court to effect such exchanges, and both this Corporation and the City National Bank & Trust Company of Chicago are powerless to restore to your client the exchange privilege of which she neglected to avail herself for 6½ years.

"We are extremely sorry that we are unable to make any suggestions whereby your client can avoid complete loss of her former investment.

"Very truly yours,
"Samuel W. White,
"President."

The information contained in this letter was correct, as shown by copy of the order of the District Court of the United States for the Northern District of Illinois, which was offered in evidence in the case, the relevant portions of which are as follows:

"It Is Therefore Ordered that the time within which the holders of first lien bonds or preferred stock of United Public Utilities Com-

pany shall surrender their securities to City National Bank and Trust Company of Chicago or Provident Trust Company of Philadelphia for exchange for the securities of United Public Utilities Corporation shall expire at the close of business on August 25, 1941.

"It Is Further Ordered that after August 25, 1941 no holder of the first lien bonds or preferred stock of United Public Utilities Company shall participate in the plan of reorganization heretofore approved by the Court or have any claim whatsoever against the said City National Bank and Trust Company of Chicago, Provident Trust Company of Philadelphia, or United Public Utilities Corporation.

"It Is Further Ordered that as soon as practicable after August 25, 1941, said City National Bank and Trust Company of Chicago and Provident Trust Company of Philadelphia shall surrender and deliver to United Public Utilities Corporation all securities, money, and other property delivered to each of them pursuant to said subparagraphs (b) and (d) of paragraph 7 of Part II of said order of December 18, 1934, as supplemented and not delivered or paid or deliverable or payable by them in exchange for first lien bons or preferred stock of United Public Utilities Company surrendered to said City National Bank and Trust Company of Chicago or Provident Trust Company of Philadelphia prior to the close of business on August 25, 1941."

Plaintiffs thereafter made demand upon defendant for a return of the purchase price paid by them for the bond. Defendant refused to comply with this demand. Suit then followed. The trial resulted in a general finding and judgment for defendant, from which judgment plaintiffs have appealed.

Appellants, in their assignment of error in this court, aver that the court erred in not rendering a finding and judgment in favor of plaintiffs.

The transaction herein involved the sale and negotiation without endorsement of what appeared on its face to be a corporate bond, but what in fact by reason of reorganization of the corporation under the bankruptcy act was worthless. One of the necessary elements to constitute a valid sale of personal property of any character is the existence of a subject-matter or thing to be sold. This rule as to property generally is stated in 55 C. J., p. 62, as follows:

"Since a completed sale can be effected only where there is a transfer of title, it is essential to a complete or executed sale that the goods which form the subject matter of the sale be in existence and identified at the time of the sale, or at least that they have a potential existence at that time; or, stating the rule conversely, things not in actual or potential existence cannot be the subject of a sale. If, therefore, there is a contract for the present sale of 'specific goods,' that is, goods identified and agreed upon at the time the contract to sell or of sale is made, the sale is void, where the substance of the thing sold is not in existence at the time of the sale, or where the

goods, without the knowledge of the parties, have ceased to exist at the time of the contract; and this rule is expressly presented by the Uniform Sales Act, and, as modified by such statute, applies where the goods partially cease to exist."

and on page 74 as follows:

"As a general rule there is an entire failure of consideration for a contract of sale, where the goods or property bought is entirely worthless;" . . .

A total want or failure of consideration may always be insisted on to avoid a contract of sale, and if the thing sold be of no value to anyone, it cannot be the basis of a bargain. [Brown v. Weldon & Langford, 27 Mo. App. 251.] In the absence of an express warranty, the assignor of a chose in action, for a valuable consideration, impliedly warrants to the assignee that the chose assigned is a valid, subsisting obligation in his favor against the debtor to the extent to which it purports to be such, and as a general rule the assignor of a claim impliedly warrants that it is valid and that the debtor or obligator is liable to pay it, and if in fact the claim is invalid, the assignor is liable to the assignee for the amount paid for the assignment. After stating and following these general principles of law, a recovery of the purchase price paid for invalid special taxbills was upheld in the case of Miners' Bank v. Burress, 164 Mo. App. 690, 147 S. W. 1110, and the court said:

"As a general rule the assignor of a claim impliedly warrants that it is valid and that the debtor or obligor is liable to pay it, and if in fact the claim is invalid, the assignor is liable to the assignee for the amount paid for the assignment. [2 Am. and Eng. Ency. Law, 1090; Daskam v. Ullman, 43 N. W. (Wis.) 321.]

"When an innocent purchaser of taxbills and the lien thereof does not get the lien because it did not exist at the time of its assignment and was rendered invalid by the wrong of the vendor, he does not get what he intended to purchase and can recover the consideration from the vendor, there being an implied warranty that the thing sold was valid and existing. [Wood v. Sheldon, 42 N. J. Law, 421.] The plaintiff purchased of defendant a *bona fide* subsisting demand and received a taxbill, *prima facie* valid, which was in fact absolutely void *ab initio*.

"Where anything is purchased under a material mistake of fact, the consideration may be recovered, whether the mistake be that of both parties or of one alone, and when the mistake is that of one party alone, whether the fact be known or unknown to the other party. [Benjamin on Sales (7 Ed.), Bennett, pp. 396, 397.]

"The rule seems generally to prevail that the purchase money paid by a buyer for a chattel may be recovered back if there is a total failure of consideration by reason of the goods purchased being wholly worthless."

In the later case of Bank of Commerce v. Ruffin, 190 Mo. App. 124, 175 S. W. 303, the Springfield Court of Appeals, reasserting the principles stated in the Burress case, reviewed cases holding that any defect unknown to seller and buyer which renders the chose in action absolutely void entitles the purchaser to recover the purchase price.

The law announced in these cases in no way conflicts with the law as announced in the case of Bank of Otterville v. Bank of Boonville, 223 Mo. App. 572, 16 S. W. (2d) 702, cited by respondent, which holds that a negotiable instrument endorsed by the seller ''without recourse'', the rule of *caveat emptor* applies in the absence of a fraudulent representations or concealment by the seller as to the value of the paper, including the solvency of the maker. That case holds that the seller does not warrant the solvency of the maker of the instrument; and, while that is the law, it is also the law that the seller does impliedly warrant the existence of the maker and that the instrument is an obligation of the maker. Hence a promissory note or other obligation which has been cancelled or declared void by a court of competent jurisdiction is no longer an obligation of the maker, and cannot thereafter be made the subject-matter of a binding sale.

The question determinative of this case simply is whether the purported bond plaintiffs purchased is of any value whatever. If it was of value plaintiffs are bound by their purchase, but if it was entirely worthless then plaintiffs received nothing for their money and are entitled to recover it. The maker of the bond involved in the transaction had become insolvent and had reorganized as a corporation under the Bankruptcy Act, 11 U. S. C. A., Chapter 10. The purpose of that Act was to facilitate rehabilitation of embarrassed corporations by a scaling or rearrangement of their obligations and shareholders' interests, thus avoiding a winding up, a sale of assets, and a distribution of the proceeds, and a salient element in such a reorganization is the discharge of all demands of whatsoever sort, executory and contingent, presently due or to mature in the future. [City Bank Co. v. Irving Trust Co., 299 U. S. 433.] The purpose of the act is not only that all demands of every nature and description are thereby discharged, but all the property dealt with shall be free and clear of all claims. [Black v. Richfield Oil Corp. (Cal.), 41 F. Supp. 989.] And it is held that under sections 224(1) and 228(1) of the Bankruptcy Act, 11 U. S. C. A., secs. 624(1) 628(1), the plan of reorganization upon confirmation becomes binding upon all creditors and stockholders and upon confirmation all their rights and interests are terminated except as provided in the plan. [Ely v. Donoho (N. Y.), 45 F. Supp. 27.]

The bankruptcy act provides as to the plan of reorganization as follows:

11 U. S. C. A., sec. 624: ''Upon confirmation of a plan—

'' (1) the plan and its provisions shall be binding upon the debtor, upon every other corporation issuing securities or acquiring property under the plan, and upon all creditors and stockholders, whether or not such creditors and stockholders are affected by the plan or have accepted it or have filed proofs of their claims or interests and whether or not their claims or interests have been scheduled or allowed or are allowable;'' . . .

Sec. 628: ''Upon the consummation of the plan, the judge shall enter a final decree—

'' (1) discharging the debtor from all its debts and liabilities and terminating all rights and interests of stockholders of the debtor, except as provided in the plan or in the order confirming the plan or in the order directing or authorizing the transfer or retention of property;'' . . .

It was under this law that the United Utilities Company, who issued the bond in controversy proceeded through the Federal Court and was reorganized. Under the provisions of this law all of its property, tangible and intangible, went into the reorganized corporation, and under this law the old corporation necessarily ceased to exist—it became the new corporation. Respondent suggests that the holder of the bond still has a cause of action against the old corporation. How could this be if the old corporation has ceased to exist, and its identity merged in the new or reorganized corporation? Where would the suit be brought, and how could service be obtained, any more than if suit be filed against a dead man? Certainly the reorganized corporation is in no way liable because the judgment of the federal court expressly provided that it should not be liable for any claim against the old corporation after August 25, 1941.

In consideration of these matters there is only one conclusion that can be drawn, and that is that the bond plaintiffs thought they were buying and defendant thought he was selling was in fact a worthless paper, and plaintiffs received nothing of the slightest value for their money, and it should be returned to them.

Ordered that the judgment of the circuit court be reversed and the cause remanded with directions to enter judgment for plaintiffs and against defendant for the sum of $489.75 with interest thereon at the rate of 6% per annum from January 14, 1943, the date of demand, and for costs.

*McCullen, J.,* concurs; *Anderson, J.,* concurs in result.

### ON RESPONDENT'S MOTION FOR REHEARING.

HUGHES, P. J.—In his motion for rehearing respondent contends that our opinion is in contravention of provision (1) of Section 3080,

Revised Statutes 1939 (Mo. R. S. A., sec. 3080). The entire Section is as follows:

"Every person negotiating an instrument by delivery or by qualified indorsements warrants: (1) That the instrument is genuine and in all respects what it purports to be; (2) that he has a good title to it; (3) that all prior parties had capacity to contract; (4) that he has no knowledge of any fact which would impair the validity of the instrument or render it valueless. But when the negotiation is by delivery only, the warranty extends in favor of no holder other than the immediate transferee. The provisions of subdivision three of this section do not apply to persons negotiating public or corporate securities, other than bills and notes."

Although we did not mention this section of the statute specifically, it was not overlooked. The section is to the effect that every person negotiating an instrument by delivery warrants that it is "genuine and in all respects what it purports to be." That the bond in this case was genuine, in the sense that it was not false, fictitious, simulated, spurious or counterfeit, may be conceded. On the other hand it was and is not "in all respects what it purports to be." It purported to be an obligation of the maker of the bond, whereas it was not, because the maker had been discharged from all of its debts and liabilities by the bankruptcy court. The bond was no longer an obligation of the maker or of anyone else; it was *functus officio,* and consequently of no value whatever to anyone, and therefore not a subject of sale, as pointed out in our opinion. And while the respondent did not warrant the solvency of the maker of the bond, he did, under all of the authorities as well as the above statute, warrant that it was in all respects what it purported to be, to-wit, a subsisting obligation of the maker.

The motion for rehearing is overruled. *McCullen* and *Anderson, JJ.,* concur.