## ILLINOIS STATE BANK OF QUINCY, ILLINOIS, Plaintiff-Appellant,

### v.

### Robert O. YATES & Doris N. Yates; Geo. J. Lewis & Joanne G. Lewis; Lawrence W. Blickhan & Patricia A. Blickhan; John R. Longlett & Shirley K. Longlett; David R. Lewis & Chari L. Lewis; John Henderson & Ruth Henderson, all of the State of Illinois; Geo. C. Lang & Arch J. Reimann; the Federal Land Bank of St. Louis, Mo., Defendants-Respondents.

### No. 47096.

Missouri Court of Appeals, Eastern District, Northern Division.

May 29, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Aug. 28, 1984.

Application to Transfer Denied
Nov. 20, 1984.

Charles E. Rendlen, Hannibal, Alfred M. Wooleyhan, Quincy, Ill., for plaintiff-appellant.

Austin Parham, Hannibal, David Collins, Macon, Branson L. Wood, III, Hannibal, Myrl B. Sternke, Palmyra, for defendants-respondents.

PUDLOWSKI, Judge.

Illinois State Bank, appellant, brought this action against Robert O. and Doris N. Yates, the Lewis Group,[1] George C. Lang and Arch J. Reimann, and the Federal Land Bank of Saint Louis to foreclose a deed of trust on property securing a promissory note. The trial court sitting without a jury entered judgment for the respondents at the close of appellant's case. We affirm.

The land which is the subject matter of this action was owned originally by Nelson and Yates Farms, Inc. On June 25, 1971, Nelson and Yates Farms executed a deed of trust to the Federal Land Bank of St. Louis. The $210,000.00 note secured by this deed of trust was replaced subsequently by a $220,000.00 note to the Federal Land Bank on August 4, 1975.

On February 3, 1976, Nelson and Yates Farms conveyed the land in question to respondents, Robert and Doris Yates, by warranty deed. This conveyance was made

---

1. The Lewis Group consists of respondents George J. Lewis, Joanne G. Lewis, Lawrence W. Blickhan, Patricia A. Blickhan, John R. Longlett, Shirley K. Longlett, David R. Lewis, Cheri L. Lewis, John Henderson, and Ruth Henderson.

subject to the deed of trust dated June 25, 1971.

On February 29, 1976, the Yates conveyed the land to the respondent Lewis Group by warranty deed. At the time of this conveyance, the $220,000.00 note to the Federal Land Bank remained unpaid. The Lewis Group then executed a $328,310.00 note to the Yates. This note was payable to order and reserved for the makers the right to apply payments to keep current the Federal Land Bank obligation which was secured by the deed of trust dated June 25, 1971.

The $328,310.00 note executed by the Lewis Group was secured by a second deed of trust which was dated February 29, 1976. Appellant, Illinois State Bank, brought suit to foreclose upon this second deed of trust.

On September 21, 1976, the Lewis Group conveyed the land to respondents Lang and Reimann by warranty deed. This conveyance was made subject to both deeds of trust.

Later, Illinois State Bank made two loans to Robert and Doris Yates, a $170,000.00 note on July 6, 1978 and a $40,000.00 note on October 10, 1978. As security, the Yates assigned the $328,310.00 note and the second deed of trust to the appellant bank.

On February 10, 1979, the $40,000.00 note came due and the Yates defaulted. Thereafter, the appellant filed this action to foreclose upon the second deed of trust on February 1, 1980.

On April 11, 1980, the respondents Yates filed for bankruptcy. The notes to the Federal Land Bank and to the appellant were listed as their obligations. The bankruptcy court discharged the personal liability of the Yates. The $328,310.00 note was not discharged. The Federal Land Bank then crossclaimed for judicial foreclosure of the first deed of trust.

During this time, respondents Lang and Reimann as successors to the maker of the $328,310.00 note have not missed a payment and are not in default. Since this action was filed, they have made their payments to the Clerk of the Circuit Court of Marion County.

On the date of trial, the Federal Land Bank lien on the land was $300,840.55, the amount due the Federal Land Bank was $250,706.04, and the amount owed by Lang and Reimann on the $328,310.00 note was $152,466.84.

The trial court sitting without a jury dismissed appellant's case and directed judgment against the appellant at the close of its case. The trial court then granted appellant's motion for specific findings of fact and conclusions of law. This appeal follows.

Appellant predicates its appeal on five grounds. First, appellant contends that respondents' motion for a directed verdict at the close of appellant's evidence was in error and that on review this court must view the evidence in the light most favorable to the appellant. Second, appellant argues that the trial court erred in failing to find the appellant a holder in due course. Third, appellant contends that the trial court failed to find the statements in the warranty deed a separate agreement to pay the $328,310.00 note executed by the Lewis Group to the Yates. Fourth, appellant alleges that the trial court erred in finding the necessity of a formal demand to be made upon Lang and Reimann to make payments to it after the date of the assignment. Last, appellant argues that the trial court erred in finding that the bankruptcy of the Yates caused a failure of consideration in the sale of land to Lang and Reimann.

Appellant first argues that respondents' motion for a directed verdict at the close of appellant's evidence has no place in a court tried case and, therefore, the trial court erred in sustaining it. Appellant further contends that on review this court must view the evidence in the light most favorable to the appellant and disregard respondents' evidence. We disagree.

Our standard of review of a court tried case is governed by Rule 73.01(c) which provides on appellate review:

(1) The court shall review the case upon both the law and the evidence as in suits of an equitable nature.

(2) Due regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses.

(3) The court shall consider admissible evidence which was rejected by the trial court and preserved. . . .

■ In the instant case, the judgment was entered on the respondents' motion for a directed verdict at the close of appellant's evidence. This is the manner customary in jury cases. Rule 72.01. "Such a procedure, however, is anomalous in an equity case and the effect of the motion was merely to submit the issues for decision upon the merits." *Brassfield v. Allwood*, 557 S.W.2d 674, 677 (Mo.App.1977). In the determination of such a submission, the trial court weighs the evidence and resolves conflicts of proof and credibility. *Lee v. Smith*, 484 S.W.2d 38, 42 (Mo.App.1972).

■ Therefore, in this court tried case, our standard of review is determined by the principle set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Brassfield*, 557 S.W.2d at 677–78. We will affirm the judgment if there is any reasonable theory on which to sustain it. *McHenry v. Claspill*, 545 S.W.2d 690, 693 (Mo. App.1976).

Appellant next contends that the trial court erred in failing to find the appellant a holder in due course. Appellant argues that the $328,310.00 note was a negotiable instrument and that it was negotiated to the appellant, Illinois State Bank. We disagree. Once it is shown that a defense exists, a person claiming the rights of a holder in due course has the burden of establishing that he is in all respects a holder in due course. RSMo § 400.3–307(3)

(1978); *Kreutz v. Wolff*, 560 S.W.2d 271, 276 (Mo.App.1977).

RSMo § 400.1–201(20) (1978) defines a "holder" as "a person who is in possession of a document of title or an instrument or an investment security drawn, issued or endorsed to him or to his order or to bearer or in blank." RSMo § 400.3–302 (1978) defines a holder in due course as a holder who takes the instrument for value, in good faith, and without notice that it is overdue, has been dishonored, or has any defense against or claim to it by others.

The threshold requirement for a person to be a holder in due course is that the note be an "instrument." RSMo § 400.3–302(1) (1978). Instrument "means a negotiable instrument." RSMo § 400.3–102(1)(e) (1978). For an instrument to be negotiable, it must "contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article." RSMo § 400.3–104(1)(b) (1978). A promise is not unconditional if the instrument "states it is subject to or governed by any other agreement." RSMo § 400.3–105(2)(a) (1978).

Further, "[p]ayment may be rendered conditional by the reservation of an option to the maker." 10 C.J.S. *Bills and Notes* § 86(b) (1938); *See Globe Indemnity Co. v. Mississippi Valley Merchants' State Trust*, 226 Mo.App. 92, 41 S.W.2d 962 (1931).

■ In the instant case, the $328,310.00 note secured by the second deed of trust, upon which the appellant brought suit to foreclose, contained the following condition:

It is understood and agreed that makers reserve the right to apply so much of the above described payments as is necessary to keep current the obligations of that certain promissory note [2] secured by a deed of trust dated June 25, 1971, recorded in Book 531 at Page 1296, Deed Records in Marion County, Missouri.

---

**2.** The Federal Land Bank deed of trust.

This reservation on the face of the instrument incorporates the maker's right to apply payments to keep current the Federal Land Bank obligation and renders the note conditional and a nonnegotiable instrument.

■ Appellant's second contention that it is a holder in due course is premised upon the ground that the $328,310.00 note was negotiated by the Yates to it. Appellant contends the attachment of the note by staples and the words on the assignment which state "a true copy of said note being hereto attached as Exhibit A" is sufficient for negotiation. We disagree.

The requirements for effective negotiation are expressly set out in RSMo § 400.3–202 (1978):

(1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary endorsement. . . .

(2) An endorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become part thereof.

The Uniform Commercial Code narrowly defines the requirements for effective negotiation of a promissory note.

Subsection (2) follows decisions holding that a purported endorsement on a mortgage or other separate paper pinned or clipped to an instrument is not sufficient for negotiation. The endorsement must be on the instrument itself or on a paper intended for the purpose which is so firmly affixed to the instrument as to become an extension or part of it. Such a paper is called an allonge.

V.A.M.S. § 400.3–202 Comment 3 (1976).

In the present case, we agree with the trial court's determination that the note was pledged. There was no mention of an endorsement in appellants' amended pleading. The two loans secured by assignment of the note to the appellant characterized themselves as pledges by the following language:

I, or we, have deposited with and pledge to said bank as collateral security for the payment of this note. . . .

Further, appellants' counsel at trial referred to the assignment by the Yates to the appellant as a pledge.

Therefore, the appellant cannot be a holder in due course because the $328,-310.00 note was a nonnegotiable instrument and was pledged as collateral security. Accordingly, the appellant is a pledgee.

■ As a pledgee, the appellant, Illinois State Bank, takes an interest in the $328,-310.00 note identical with that of the pledgor, Yates. 72 C.J.S. *Pledges* § 8 (1951); *Kaw Valley State Bank & Trust v. Commercial Bank of Liberty, N.A.*, 567 S.W.2d 710, 712 (Mo.App.1978). Yates as payee-pledgor of the $328,310.00 note was subject to the rights of the Lewis Group and their successors, Lang and Reimann, to make payments to the Federal Land Bank if the Yates failed to keep their obligation to the Federal Land Bank current. When the appellant accepted the pledge of the note, it was also subject to Lang and Reimann's right to apply payments to the Federal Land Bank.

In *Kaw Valley State Bank and Trust*, the court decided a case with facts similar to the instant case. The plaintiff bank sued another bank upon a nonnegotiable certificate of deposit. The nonnegotiable certificate of deposit was pledged to the plaintiff bank as collateral for a loan. When the loan came into default, the plaintiff bank sought to recover under the pledged certificate. The court held that the defendant bank was not liable under the certificate of deposit because it had a right of setoff against the deposit which existed prior to the certificate's assignment to the plaintiff. *Id.* at 713.

■ In the instant case, the appellant sued upon the $328,310.00 note which was a nonnegotiable instrument. The instrument was pledged by the Yates to the appellant as collateral security for two loans. When the $40,000.00 loan came into default, the appellant sought to recover

under the pledged $328,310.00 note. Accordingly, we must affirm the decision of the trial court because Lang and Reimann, the successors to the maker of note sued upon, had a prior right to apply payments to keep current the Federal Land Bank obligation.

■ Moreover, we must affirm the decision of the trial court because the appellant is not entitled to foreclose the second deed of trust. "Valid foreclosure depends on breach by the mortgagor of a condition authorizing foreclosure at the time the foreclosure proceeding was commenced." *State ex rel. Leverage Investment Enterprises, Ltd. v. Yeaman,* 581 S.W.2d 53, 57 (Mo.App.1979). The $328,310.00 note is not in default. Respondents Lang and Reimann have not missed a payment on the note and are not in default. They have not breached any condition of the second deed of trust. Therefore, the appellant has no right of foreclosure.

■ Appellant's third contention is that the trial court failed to find the statements in the warranty deed a separate agreement to pay the $328,310.00 note executed by the Lewis Group to the Yates. Appellant strongly argues that Lang and Reimann had no knowledge of the language and provisions of the $328,310.00 note and, therefore, Lang and Reimann specifically did not reserve the right to apply payments to keep the Federal Land Bank obligation current. Appellant concludes that Lang and Reimann have no right to apply payments to the Federal Land Bank and that their land is now the primary fund to pay the Federal Land Bank's obligation and the appellant's obligation. We disagree.

"[A] mortgage, or deed of trust in the nature of a mortgage, given on land to secure the payment of a debt, is now regarded in this state as being, in its last analysis, a lien and nothing more." *Missouri Real Estate & Loan Co. v. Gibson,* 282 Mo. 75, 220 S.W. 675, 676 (1920). "It is merely the right to have the debt, if not otherwise paid, satisfied out of the land." *Id.* at 676. Further, "[i]t is well-settled law that one who purchases mortgaged property subject to the mortgage does not incur any personal liability for the payment of the mortgage debt. Personal liability on the part of the purchaser is created only by his distinct assumption of the debt, or contractual obligation to pay it." *Barnes v. Ganss,* 72 S.W.2d 884, 888 (Mo.App.1934).

We agree with the trial court that Lang and Reimann assumed the obligation to pay the indebtedness evidenced by the $328,310.00 note and that their title to the real estate was taken subject to the Federal Land Bank note. The warranty deed by which they took possession of the land contained the following language:

This conveyance is made subject to the lien of a Deed of Trust recorded in Book 531 at Page 1296, Marion County, Missouri.[3]

This conveyance is made subject to the lien of a Deed of Trust recorded in Book 536 at Page 623, Marion County, Missouri, securing a promissory note [4] which the Second Part assume and agree to pay.

Further, on October 15, 1976, Mr. Ronald Donsky, attorney for Lang and Reimann, wrote a letter to the Federal Land Bank. The letter stated the following:

As part of the consideration to Mr. and Mrs. Yates, the sellers of the above property, the buyers have a promissory note payable to Robert O. Yates and Doris N. Yates. Under the terms of that note, the makers reserve the right to apply payments due on the note to Mr. and Mrs. Yates to the extent that it becomes necessary in order to keep current the note payable to the Federal Land Bank. Accordingly, it is hereby requested that in the event that there is any default in the payments on the note owed to the Federal Land Bank that Mr. Reimann and Mr. Lang be notified immediately.

The letter clearly contradicts the allegation that Lang and Reimann had no knowl-

---

3. The Federal Land Bank deed of trust.

4. This is the deed of trust appellant seeks to foreclose.

edge of the default provision. In fact, the letter shows that Lang and Reimann knew about the default provision long before Illinois State Bank transacted with Mr. Yates.

In its fourth point, appellant argues that the trial court erred in finding that a formal demand by the appellant was necessary to make Lang and Reimann apply payments to it after the date of assignment. Appellant argues that Lang and Reimann have a legal duty to make payments to it as holder of the $328,310.00 note and that no formal demand was necessary to direct payments to the appellant. We disagree.

■ Appellant predicates this argument on the ground that it is a holder in due course of the $328,310.00 note. We have already determined that the appellant is a pledgee-assignee of a nonnegotiable instrument. In the case of debt evidenced by a nonnegotiable instrument, the obligor is protected from the assignee for payments made to the assignor prior to notice of the assignment. *Boyd v. Sloan*, 385 Mo. 163, 71 S.W.2d 1065, 1066 (1934); Further, RSMo § 400.9–502(1) (1978) provides in the event of default, "the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him whether or not the assignor was theretofore making collections on the collateral, and also to take control of any proceeds to which he is entitled under Section 400.9–306."

■ Although appellant was entitled to notify Lang and Reimann to make payments to it on the assigned $328,310.00 note, the bank failed to do so. In spring 1979, Mr. Harold Schork, representative of appellant bank, advised Lang and Reimann of the assignment and that the Yates were in default. He also told Lang and Reimann that the bank would *"probably"* be making a demand on them for payments due by the Yates. (Emphasis ours). Mr. Schork never directed Lang and Reimann to make payments to the bank, nor did he exhibit to them the assignment. No further contact was made between the parties until November 28, 1979. At that time, Mr. Schork

wrote Lang and Reimann to advise them "that before any payment is made to Mr. and Mrs. Yates on the contract that you contact this office." This also cannot be considered effective notice to Lang and Reimann to make payments to the bank. Consequently, respondents Lang and Reimann are not liable to the appellant for payments made to the Yates prior to November 28, 1979.

■ Appellant's final contention is that the trial court erred in finding that the bankruptcy of the Yates caused a failure of consideration in the sale of the land to the Lewis Group and their successors Lang and Reimann. Appellant contends that the Yates' obligation to the Federal Land Bank was discharged in bankruptcy and, therefore, the obligation of Lang and Reimann was also cancelled. Appellant also contends that Lang and Reimann received what they bargained for even though the Yates went into bankruptcy and, therefore, there was no failure of consideration. We disagree.

We have already determined that the appellant was a pledgee-assignee and not a holder in due course. Appellant was subject to all the defenses the maker may have against the note prior to the notice of the assignment. *Kaw Valley*, 567 S.W.2d at 713. These defenses include failure of consideration. *Kreutz v. Wolff*, 560 S.W.2d at 276; RSMo § 400.3–408 (1978).

We agree with the trial court that the bankruptcy and discharge of the Yates constituted a partial failure of consideration. The Lang and Reimann option proposed clearly set out the consideration to be paid:

EXISTING INDEBTEDNESS: Purchaser acknowledges that the property is presently encumbered with two (2) DEEDS OF TRUST in the aggregate face amount of $328,310.00, copies of which are attached hereto as Exhibits B and B–1. Purchaser agrees, in Partial consideration of the total purchase price hereunder, to assume said DEEDS OF TRUST, to the extent permitted by the terms thereof.

The deed in which Lang and Reimann took title obligated them to pay the $328,310.00 note because the note was assumed. Lang and Reimann purchased the land subject to the Federal Land Bank obligation and did not assume personal liability on it.

The only parties personally liable on the Federal Land Bank obligation were the Yates. The $328,310.00 was executed by the Lewis Group to enable the Yates to keep current their obligation to the Federal Land Bank. The Yates' duty to keep current this obligation was partial consideration of the transaction in which the Lewis Group purchased the land. Likewise, this duty was partial consideration of the transaction in which Lang and Reimann purchased the land.

Appellant concedes that neither the Lewis Group nor Lang and Reimann had any personal obligation to pay the Federal Land Bank debt. Only the Yates were personally liable on the Federal Land Bank obligation. Therefore, the subsequent discharge of the Yates' obligation in bankruptcy and the Federal Land Bank's suit to foreclose its deed of trust resulted in a partial failure of consideration.

Accordingly, we affirm the judgment of the trial court because there is substantial evidence to support it. The appellant sued upon a deed of trust securing a nonnegotiable instrument. The appellant was a pledgee and not a holder in due course and, therefore, was subject to the defense of partial failure of consideration. Further, the appellant failed to make an effective demand for payment upon Lang and Reimann.

We must also affirm the judgment of the trial court because the appellant had no right to foreclose upon the second deed of trust. The $328,310.00 note was not in default and there had not been a breach of any condition of the second deed of trust which secured it.

The judgment of the trial court is affirmed.

DOWD, P.J., and REINHARD and CRIST, JJ., concur.