**Rick L. MEANS and Fred C. Barry, Appellants,**

v.

**Nancy CLARDY, William Bruce Clardy, John A. Gross, Zurich Insurance Company, Gary Doerhoff and Joan Doerhoff, Respondents.**

**No. WD 38768.**

Missouri Court of Appeals,
Western District.

May 19, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 30, 1987.

Application to Transfer Denied
Sept. 15, 1987.

Robert L. Hyder, Jefferson City, for appellants.

Charles J. Fain, Dale C. Doerhoff, Curtis G. Hanrahan, Thomas D. Graham, Jefferson City, for respondents.

Before GAITAN, P.J., and SHANGLER and MANFORD, JJ.

GAITAN, Presiding Judge.

Plaintiffs, Rick Means and Fred Barry, appeal the judgment in this court-tried case in favor of defendants, Gary Doerhoff, Joan Doerhoff, Nancy Clardy, Bruce Clardy, John Gross, and Zurich Insurance Company, in their action to collect on a promissory note, and to collect damages against a notary and his bonding company for making a false affidavit. Plaintiffs claim that the trial court's judgment is erroneous as a

**8**

matter of law. The judgment of the trial court is affirmed in part and reversed in part.

On October 11, 1979, defendants Gary and Joan Doerhoff signed a Bill of Sale transferring their cabinet business, known as Ozark Cabinet and Millwork Shop, to defendant, Nancy Clardy. As part of the sale, the Doerhoffs received a note dated October 12, 1979, in the amount of $31,000, purportedly signed by Nancy Clardy.

The note stated that $5000 was to be paid on October 25, 1979. The balance of the note was to be paid in monthly installments of $1250 "to be paid in cabinets figured at the prevailing builders price for Jefferson City ... until October 12, 1981, at which time the entire balance thereof is due and payable in cash ..."

Subsequently, on July 18, 1980, plaintiffs sold a four-plex to Gary and Joan Doerhoff in exchange for 6.81 acres of land and the Nancy Clardy note. The Doerhoffs did not endorse the note but merely delivered it, along with the Bill of Sale to which the note was attached, to plaintiffs. The balance due on the note at that time was $21,882 since several of the monthly installments were in arrears. Plaintiffs were aware that all of the payments had not been made on the note. Plaintiffs were not concerned because they thought interest was accruing on the past due amounts and that the balance of the note would be paid in full in cash on October 12, 1981.

Although the note was delivered to plaintiffs, the Doerhoffs continued to receive the cabinets which were delivered as payments on the note. Under the contract between plaintiffs and the Doerhoffs, the Doerhoffs were to pay plaintiffs the cash value of any cabinets received under the note. The contract stated:

Buyer [Doerhoffs] agree to buy cabinets from Ozark Cabinet Shop per agreement stated in the Note from Nancy Clardy as long as Ozark Cabinet Shop will furnish said cabinets until October 12, 1981. Buyer also agrees to get a statement of value of the cabinets from Ozark Cabinet shop and pay the sellers [plaintiffs] the amount of said statement in cash within 15 days after delivery of each set of cabinets.

During the negotiations between plaintiffs and the Doerhoffs, Mr. Doerhoff took plaintiffs by the cabinet shop. Mr. Doerhoff informed plaintiffs that Nancy Clardy's son, Bruce Clardy, managed the shop, but that Nancy was the owner. Neither Bruce or Nancy Clardy was at the shop that day. Plaintiff Means testified that Mr. Doerhoff said that Nancy Clardy had signed the note and that he would not have accepted it without her signature since he knew of her sound financial condition.

Mr. Means testified that Mr. Doerhoff asked plaintiffs not to contact Nancy Clardy about the transfer of the note because it might "throw a monkey wrench in the deal." Mr. Means also testified that Mr. Doerhoff said that Mrs. Clardy had made the $5000 payment that was due under the note.

Plaintiffs said that they never contacted Nancy or Bruce Clardy prior to closing the sale of the four-plex to the Doerhoffs. Plaintiffs did check with the financial institutions wherein Mr. Doerhoff said that Nancy Clardy had money, and were informed that she was a good credit risk.

From July 18, 1980 until the spring of 1981, plaintiffs received only two payments totalling $800 from the Doerhoffs. Then in the spring of 1981, plaintiffs were informed by Bruce Clardy that the cabinet shop was "going under." Plaintiff Means said that he told Mr. Clardy that he would expect Mrs. Clardy to pay the note in full on October 12, 1981. Mr. Clardy then told Mr. Means that the signature on the note was not really Nancy Clardy's.

Bruce Clardy then filed for bankruptcy. Plaintiffs said that they attempted to contact Nancy Clardy but were unsuccessful. Plaintiffs' attorney wrote to Mrs. Clardy on May 26, 1981, inquiring about the note. Mrs. Clardy's attorney wrote back that Mrs. Clardy denied making the note.

Mrs. Clardy testified that she did not sign the Bill of Sale or the note. She stated that her son, Bruce, told her that he had signed her name to the documents.

She did not remember exactly when he told her this.

Mrs. Clardy did not contact Mr. Doerhoff or plaintiffs when she learned that Mr. Clardy had signed her name. She also testified that she had learned, after-the-fact, that Mr. Clardy used $5000 from a remodeling fund in order to pay the initial $5000 due on the note. Mrs. Clardy had authorized Mr. Clardy to draw upon the fund to remodel an investment property which she owned. She did not authorize him to use the money to pay the note for the cabinet shop.

Nancy Clardy's signature on the Bill of Sale was notarized by defendant John Gross. The Bill of Sale referred to the "attached note" but the parties could not remember whether the note was actually attached at the time the signatures on the Bill of Sale were notarized. The date at the top of the note was one day later than the date on which the Bill of Sale was notarized. John Gross testified that Mrs. Clardy did not sign the Bill of Sale or the note in his presence. Mr. Gross said that he notarized the Bill of Sale on the assurance of Bruce Clardy that Mrs. Clardy had signed it.

A witness, Jeff Hearns, testified that he was in the office at the time the Bill of Sale and note were signed. He stated that he recalled that the signatures were placed on the documents by Bruce Clardy and Mr. Doerhoff.

Mr. Doerhoff testified that he did not remember whether he was present when the Bill of Sale was notarized. He was sure that he did not know that Mr. Clardy had signed Mrs. Clardy's signature. He stated that he thought Bruce Clardy was acting for his mother in the negotiations. He admitted, however, that he never had any discussions about the sale with Mrs. Clardy even though he often called her house looking for Mr. Clardy.

Bruce Clardy took the Fifth Amendment when asked whether he had signed the note. He stated that Mr. Doerhoff brought the Bill of Sale and note to the office and that the note "was never taken out of his [Mr. Doerhoff's] presence." Since Mr. Clardy would not testify as to who signed the note, he never stated whether Mr. Doerhoff saw him sign his mother's name.

Plaintiffs filed their Petition in three counts. Count I is against Nancy Clardy for payment of the note, or, alternatively, against Bruce Clardy for payment of the note if he signed the note without Mrs. Clardy's authority. Count II is against Gary and Joan Doerhoff for payment of the note. Plaintiffs allege that the Doerhoff's "specifically warranted, orally and by statute ..." that Nancy Clardy's signature on the note was genuine. Plaintiffs' also alleged that the Doerhoffs knew that the signature was not genuine and fraudulently represented that it was genuine. Count III is against John Gross and his bonding company, Zurich Insurance, for falsely acknowledging the signature on the Bill of Sale to which the note was attached.

The trial on plaintiffs' claims was commenced on February 2, 1983. After plaintiffs presented their case, the defendants moved to dismiss. The trial court granted all the defendants' motions, except for defendant Bruce Clardy's, stating that "plaintiffs failed as a matter of law to prove their claim ..." The court retained jurisdiction over plaintiffs' claim against Bruce Clardy and the trial was resumed on July 14, 1986 as to this claim. The trial court found that plaintiffs were not holders of the note and therefore dismissed plaintiffs' claim against Bruce Clardy.

We review this court-tried case under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. 1976), and we must affirm the judgment unless it is not supported by substantial evidence, it is not against the weight of the evidence, or it erroneously declares or applies the law. *Brassfield v. Allwood*, 557 S.W.2d 674, 677–78 (Mo.App.1977).

A.

Plaintiffs claim that the "uncontroverted evidence" was that the Doerhoffs "transferred the note to plaintiffs by assignment and by delivery and as a matter of law they guaranteed the signature of Nancy Clardy." Plaintiffs rely upon the following

provisions of § 400.3–417 RSMo 1986 which states:

> (2) Any person who transfers an *instrument* and receives consideration warrants to his transferee ... that
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (b) all signatures are genuine or authorized;　and
>
> (c) the instrument has not been materially altered;　and
>
> (d) no defense of any party is good against him;
>
> \*　　\*　　\*　　\*　　\*　　\*

(Emphasis added)

■ Initially, we note that § 400.3–102(1)(e) defines "instrument" to mean a negotiable instrument. Section 400.3–104(1) states that in order for a writing to be a negotiable instrument it must, among other things, "contain an unconditional promise or order to pay a sum certain *in money,* and no other promise, order, obligation or power ..." (emphasis added) The Clardy note was to be paid in *cabinets.* Therefore, the note is not negotiable and the UCC, including § 400.3–417, is not applicable in determining the rights and liabilities of the parties in this case. *See Rotert v. Faulkner,* 660 S.W.2d 463, 467 (Mo.App. 1983).

■ Even if the note were negotiable, the Doerhoffs never negotiated the note to plaintiffs. The note was payable to the order of Gary and Joan Doerhoff. The Doerhoffs never endorsed the note as required for effective negotiation under § 400.3–202 RSMo. Therefore, the trial court correctly determined that plaintiffs were not "holders" of the note as that term is defined in § 400.1–201(20) RSMo 1986.

■ Notwithstanding that the note was not negotiable, it still could be transferred to plaintiffs by assignment or pledge. *See Illinois State Bank v. Yates,* 678 S.W.2d 819, 824 (Mo.App.1984); *Rotert v. Faulkner,* 660 S.W.2d 463, 468 (Mo.App. 1983); *Kaw Valley State Bank & Trust v. Commercial Bank of Liberty,* 567 S.W.2d 710, 712 (Mo.App.1978). A pledgee or assignee of a nonnegotiable note may enforce it to the same extent as the pledgor or

assignor might have enforced the note. *Yates,* 678 S.W.2d at 824; *Rotert,* 660 S.W.2d at 468. Furthermore, an assignor for valuable consideration impliedly warrants that the note is a valid obligation existing in the assignor. If the note is invalid the assignor is liable to the assignee. *See Friedman v. Schneider,* 238 Mo. App. 778, 186 S.W.2d 204, 206 (Mo.App. 1945).

■ Unfortunately, plaintiffs theory of recovery pursued at trial is based solely upon § 400.3–417(2) of the UCC and the incorrect assumption that the note was a negotiable instrument. "An appellate court should not interject a theory of liability not actually advanced by the parties to the litigation and decide the case on such basis." *Ranger Insurance Co. v. Ailshire,* 551 S.W.2d 896, 900 (Mo.App.1977). The judgment of the trial court is correct that plaintiffs cannot recover against Gary and Joan Doerhoff on the theory pursued. The facts indicate, however, that plaintiffs might be entitled to recover against the Doerhoffs if their case were brought upon a proper theory. Therefore, in the interest of justice, we reverse and remand in the exercise of judicial discretion to give plaintiffs the opportunity to amend their pleadings to proceed upon the theory which their evidence discloses. *Zimmerman v. Associates Discount Corp.,* 444 S.W.2d 396, 398 (Mo. banc 1969); *See also Union Savings Bank v. Cassing,* 691 S.W.2d 513, 515–16 (Mo.App.1985); *Simrall v. Morrow,* 362 S.W.2d 765, 767 (Mo.App.1962).

### B.

As assignees, plaintiffs could have enforced the note against Nancy Clardy to the same extent that the Doerhoffs could. However, Mrs. Clardy did not sign the note, and, therefore, she is not liable on the note. Plaintiffs state in their brief that "there was some evidence to indicate that Nancy Clardy ratified the signature on the forged note and thereby became liable." Plaintiffs cite no legal authority for this point. We note that "[i]f the point is one for which precedent is appropriate and

available, it is the obligation of appellant to cite it if he expects to prevail." *Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978). However, we will consider plaintiffs' point *ex gratia.*

■ "Ratification" is an express or implied confirmation, with knowledge of all material matters, of an act performed by a person who assumed to act on another's behalf but who lacked authority to do so. *Hyken v. Travelers Ins. Co.*, 678 S.W.2d 454 (Mo.App.1984). There was no evidence that Mrs. Clardy ratified Bruce's signature of her name on the note.

### C.

Plaintiffs claim that if the note was forged by Bruce Clardy, then he is liable as maker of the note. Once again, plaintiffs have not cited any authority for their position but we will consider it *ex gratia.*

Plaintiffs argued at trial that under § 400.3–404(1) RSMo, Nancy Clardy's unauthorized signature operates as Bruce Clardy's signature. The trial court dismissed plaintiffs' claim on the grounds that plaintiffs had no "standing" because they were not holders of the note.

The UCC in § 400.3–404(1) allows a forged signature to operate as the signature of the forger, making him or her liable as the maker of the note. As the Missouri Code Comment states, this constitutes a change in the law. Prior to the UCC, the action was one for deceit, or for breach of implied warranty of authority where one assumes to act as agent for another where no authority to do so exists. *See* Vol. 1 F. Mechum, A Treatise On The Law of Agency, § 1363 (2d Ed.1914); *Chamberlain v. Spalding*, 237 Mo.App. 1040, 170 S.W.2d 454, 458 (1943); *Newland Hotel Co. v. Lowe Furniture Co.*, 73 Mo.App. 135, 138 (1897); 11 Am.Jur.2d § 708.

■ Since the UCC is inapplicable to this nonnegotiable note, plaintiffs cannot recover against Bruce Clardy on the note itself. Plaintiffs, as assignees of the Doerhoffs, would stand in the same position as the Doerhoffs as regards any recovery which might be obtained from Bruce Clar-

dy on a theory of fraud or breach of warranty of authority. Once again, however, we cannot decide the case upon a theory which plaintiffs did not pursue. Since it appears that plaintiffs might be entitled to recover if their case were brought upon a proper theory, we reverse and remand to allow plaintiffs to amend their pleadings against Bruce Clardy.

### D.

Plaintiffs claim that they are entitled to recover against the notary, John Gross, and his bonding company, Zurich Insurance Company, under § 486.355 RSMo 1986 which states:

> A notary public and the surety or sureties on his bond are liable to the persons involved for all damages proximately caused by the notary's official misconduct.

Further, § 486.365 RSMo 1986 provides "[i]t is not essential to a recovery of damages that a notary's official misconduct be the only proximate cause of damages."

■ In this case, Mr. Gross admits that he notarized the Bill of Sale when he did not see Mrs. Clardy sign it. The note, however, was not notarized. Thus, the question is whether Mr. Gross' official misconduct in notarizing the Bill of Sale proximately caused plaintiffs' damage. The test of probable cause is, "whether, after the occurrence, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant." *Green v. Kahn*, 391 S.W.2d 269, 277 (Mo. 1965).

A directed verdict at the close of plaintiff's evidence in a court-tried case is treated as a motion to dismiss for failure to make a submissible case. *Hercules Const. Co. v. C.J. Moritz Co.*, 655 S.W.2d 779, 785 (Mo.App.1983). "A directed verdict at the close of plaintiff's case is a drastic measure and should be done only when all of the evidence and reasonable inference to be drawn therefrom are so strongly against plaintiff that there is no room for reasonable minds to differ." *Id.* We must view the evidence in the light most favorable to plaintiffs and give them the benefit of ev-

ery reasonable inference. *Mathes v. Trump,* 458 S.W.2d 297 (Mo.1970); *Miles v. Iowa Nat. Mut. Ins. Co.,* 690 S.W.2d 138 (Mo.App.1985).

The notarized Bill of Sale referred to the "attached note" and plaintiffs received the Bill of Sale and note together. It is not clear that the note and the Bill of Sale were not together at the time the Bill of Sale was notarized as well. There is room for reasonable minds to differ as to whether the note and the Bill of Sale formed one notarized document and whether plaintiffs' injury in not being able to enforce the note is the reasonable and probable consequence of Mr. Gross' official misconduct. The judgment of the trial court is reversed and remanded as to defendants John Gross and Zurich Insurance Company.

The judgment of the trial court in favor of defendant Nancy Clardy is affirmed. The judgment of the trial court in favor of defendants Gary Doerhoff, Joan Doerhoff, Bruce Clardy, John Gross, and Zurich Insurance Company is reversed and remanded for further proceedings.

All concur.