Walter THOMAS, et ux, Appellants,

v.

Rosalie DeGRACE, Respondent.

No. WD 41358.

Missouri Court of Appeals,
Western District.

Sept. 19, 1989.

John R. Campbell, Kansas City, for appellants.

Lester E. Adams, Jr., Browning, for respondent.

Before SHANGLER, P.J., and
TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

Walter Thomas and his wife, Phileda L. Thomas, sued Rosalie DeGrace for damages for breach of contract and for fraudulent misrepresentation. At the close of all the evidence at the trial, Judge Gray directed a verdict in DeGrace's favor against the Thomases and the Thomases have appealed from the resultant judgment.

The evidence was that Walter Thomas had contracted to buy from DeGrace a tavern with the colorful name of "The Lost Weekend".

The contract, signed by Rosalie P. DeGrace, read in its entirety as follows:

6/26/86

I agree to Sell all Equipment in The Bar now named Lost Week End 2449 Indep Ave Providing Leta's Inc can obtain a Lease. I also agree to Sign all papers When Needed and Let Leta's Inc., run off my License till New License are purchased. For total Sum of Eight thousand dollars [to] be paid as Follows: Two Thousand now, Two Thousand as Soon as Lease is Signed and balance of Four Thousand after 60 days.

/signed/ Rosalie P. DeGrace

Leta's Inc., mentioned in the contract, was a corporation of which Phileda Thomas was the sole shareholder. Thomas testified that his plan was to turn the bar over to Leta's Inc., when he got a lease and a liquor license.

Thomas paid DeGrace in three checks totaling $9,100. Of that amount $600 was for liquor supplies left in the bar by DeGrace. The evidence contains no explanation for the additional $500 above the sum of the $8,000 contract price of the bar and the $600 for inventory.

Thomas entered into the operation of the bar on July 1, 1986. After he commenced operating, "Liquor Control" called him and he went to the (Kansas City) Liquor Control office. There, according to Thomas's testimony, he was told that his contract with DeGrace would not satisfy Liquor Control requirements—that to get Liquor

Control off his back he should have an agreement stating he was managing the bar for Rosalie DeGrace, giving her 10% of the gross, signed by her and notarized. Thomas went back to DeGrace and she signed the following memorandum dated June 28, 1986:

> I agree to Let Leta's Inc. manage the Lost Weekend till 12/31/86, The Extent of my Lease, pay all Bills and manage to not put my License in Danger.
>
> /signed/Rosalie DeGrace

Thomas operated the bar for four months and ten days, that is, to November 10. On that day DeGrace came to the bar and took her license off the wall. Thomas was evidently not there at the time but he was called and came to the bar. The police were there. DeGrace was intoxicated, according to Thomas's testimony, and was pouring drinks for herself.

Thomas testified that after November 10 when DeGrace took her license off the wall, the police and Liquor Control asked him to close the business down, which he did.[1] Thomas testified he waited till the 20th of November "hoping that she would give the license back and I could reopen the bar and continue the business". On November 20 he removed from the tavern the portable property but was prevented from taking the rest of it when the landlord padlocked the door and would not permit him to take it.

Thomas further testified Ms. DeGrace at the time he took over the tavern operation had unpaid bills for liquor in the amount of $200 or $300 and for trash pickup in the amount of $99. He paid these bills so as to be able to buy liquor and in order to get his trash picked up. He paid unpaid licenses, fees and taxes amounting to $224.01. Also, according to his testimony, the air conditioner required repairs totaling $687.04, contrary to Ms. DeGrace's representation that everything was in operable condition.

■ While we sustain the trial court's judgment based upon a directed verdict if the same is sustainable on any theory, *Za-horsky v. Griffin, Dysart, Taylor, Penner and Lay, P.C.,* 690 S.W.2d 144, 155 (Mo. App.1985); *Illinois State Bank of Quincy, Illinois v. Yates,* 678 S.W.2d 819, 823 (Mo. App.1984), this does not mean that we must sua sponte search the universe for justification for the directed verdict. *May Department Stores Co. v. Adworks, Inc.,* 740 S.W.2d 383, 386 (Mo.App.1987). As Judge Satz wrote in *May Department Stores Co.,* 740 S.W.2d at 386, "This does not require us, however, to become an advocate for [respondent] and develop a theory which was neither made nor briefed by [respondent]."

■ In the present case, the trial judge gave as his reason for directing the verdict for defendant DeGrace on plaintiffs Thomases' claim that "if there was an agreement it was with Leta's Inc and Leta's Inc is not a party to this lawsuit". This is the only issue which is joined by the parties in their briefs, and we deal with that issue in the succeeding paragraphs.

The evidence would justify the conclusion that the contract was made by Walter Thomas with DeGrace for the benefit of Leta's Inc. "[A] party with whom or in whose name a contract has been made for the benefit of another ... may sue in his own name in such representative capacity without joining with him the party for whose benefit the action is brought." Supreme Court Rule 52.01; *Liberty Financial Management Corp. v. Beneficial Data Processing Corp.,* 670 S.W.2d 40, 51 (Mo.App.1984).

The trial court was in error in sustaining the motion for a directed verdict on the ground that the plaintiffs were not the real parties in interest.

The judgment is reversed and the cause remanded for a new trial.

All concur.

---

1. The record does not tell us if it was her state or city license which Ms. DeGrace removed from the wall, but the rules of the Missouri Division of Liquor Control require both to be displayed on the premises. Mo.Code Regs. tit. 11, § 70–2.030 (1988).