### IN THE

# SUPREME COURT

### OF THE

## STATE OF MISSOURI,

### MARCH TERM, 1853, AT ST. LOUIS

~~~~~~~~~~~~~~~~

## BATES, Respondent, *vs.* BOWER, Appellant.

1. Under the code, where the trial is by the court without a jury, the judgment will be reversed, unless the court finds and states on the record the facts on which its judgment is based, and unless the facts found support the judgment.
2. A deed which described the land conveyed as "part of lot number three, which is more particularly known as the lot or part of lot on which the Hannibal hotel stood," *was held* to pass all the land on which the hotel stood, although it covered part of lot three, and part of an adjoining lot.

### *Appeal from Hannibal Court of Common Pleas.*

This was a petition filed by Bates to foreclose a mortgage executed by Ann Lowes, November 1, 1845, on real estate described as follows: "Thirty feet off of the north side of lot number three, in block number ten, on second street, and running back to the alley in said block, one hundred and forty-two feet; also five and a half feet off from the south side of lot number four, in said block; being the same ground on which

is now erected the brick building known as the city hotel, in the city of Hannibal."

The defendant, Bower, claimed the premises under a title from Mrs. Lowes, older than the mortgage. It appeared that Mrs. Lowes, on the 5th of April, 1845, executed an agreement to sell and convey to James G. Caldwell property which was described in the agreement, as follows : " Part of lot three, in block number ten, in the town of Hannibal, on which said Ann Lowes is now finishing a large brick house, which is more particularly known as the lot or part of lot on which the Hannibal hotel stood."

On the 29th of January, 1847, Mrs. Lowes, under the agreement, executed to Caldwell a deed for the property, in which it was described the same as in the mortgage from Mrs. Lowes to Bates. Afterwards Bower and one Johnston acquired the title of Caldwell. It appeared in evidence that the Hannibal hotel covered thirty feet on the northern side of lot three, and five and a half feet on the south side of lot four.

The cause was tried before the court without a jury. The plaintiff had judgment as to the five and a half feet, and the defendant as to the remaining thirty feet, but the court did not find the facts on which its judgment was based, as required by the new code of practice. The defendant appealed.

*Richmond*, for appellant.

*Glover & Richardson*, for respondent.

GAMBLE, Judge, delivered the opinion of the court.

1. There has been much embarrassment experienced by the court in the decision of cases which come from the circuit and other courts, where the trials have been by the courts without juries. In a very large number of cases, the courts have entirely failed to find the facts as required by the fifteenth article of the code, and in others the finding of the facts is very imperfect. In very many cases, where the court has found the facts and the party has sought a review of the finding, or a

review of the law, there has been but a very imperfect compliance with the provisions of the code relating to applications for review. Such has been the danger to suitors of losing their rights by a failure to conform to the requirements of this article, that this court has thought it proper to warn parties of the danger of submitting any really disputed case to the court for trial. We cannot see the sacrifice of right to the mere forms of practice without regret. It is proposed now to give a brief summary of the practice which is to be observed under the fifteenth article of the code.

The second section of the article requires, that where a question of fact is tried by the court, its decision shall be given in writing, and in such decision the facts shall be first stated and then the conclusion of law upon them.

In several cases which have been before this court, the circuit courts have entirely neglected this provision of the code, and have found general verdicts for the plaintiff or defendant, and rendered judgments thereon as if the code had never been adopted. When such a case was presented to us, ( *Gobin* v. *Hudgens*, 15 Mo. Rep. 402,) we were called upon to determine what should be the effect of this failure, on the part of the court, to find the facts as required by the code. The party against whom the general verdict had been found, had taken no exception, in any form, to that mode of proceeding, nor was there any motion to arrest the judgment, founded on the reason that the facts had not been found. There was a motion for a new trial, as under the former practice, but no motion for review. We had to determine, then, between reversing the judgment for the failure of the court to find the facts when the party had not, in the court below, objected to the proceeding, or, of affirming the judgment because the record did not show error in the judgment, in the mode provided for by law. The court, then, acting with hesitation upon a new question, under a statute which professes to introduce a new system of practice, and which is so imperfect that, in the state in which it originated, it has been repeatedly amended in most of its parts,

adopted the rule that, in such cases, the judgment would be affirmed. Subsequent experience has satisfied us, that the rule thus adopted is more likely to produce injury to the rights of litigants than would result from that of reversing the judgments, where the courts below fail to find the facts. 'A judgment to be rendered by the court, where the trial is before the court, is to be a "judgment upon the decision," and the decision must, therefore, be made according to the code. The case, then, of *Gobin* v. *Hudgens*, will not hereafter be followed in like cases.

The decision, which is to be made in writing, is to contain a statement of the facts and then the conclusion of law upon them. As the conclusion of law, which is thus to be pronounced, is a conclusion upon all the facts material to the right of action and defence, such material facts should all be stated in the decision itself, and not by reference to depositions or other papers. The decision is evidently a substitute for a special verdict, or the statement of facts in the old form of rendering a decree in chancery, and is intended to show the whole case upon which the judgment is rendered. Facts that are alleged on either side, but not found affirmatively in the decision, would, of course, be understood to be negatived, but it would give facilities to the application for a review, if the decision should expressly negative the existence of such facts.

When the decision is made, stating the facts and the conclusion of law thereon, the judgment which is entered according to such decision, will be erroneous if the facts found do not warrant the conclusion of law expressed in the decision. If either party denies the correctness of the finding of any fact, he applies for a review and specifies the fact which the court has erroneously found. A case is then made, which is a statement of the evidence applicable to the disputed fact, and this case is made or settled under the supervision of the judge. Although no mode of authenticating this statement is provided by the code, yet, if the judge permits it to become part of the

record, by being incorporated in a bill of exceptions, this will be a sufficient admission of its correctness.

In the present case, we have a trial by the court, and neither a special finding of the facts nor a general verdict for either party. There is a kind of decree entered, in which "it is ordered and adjudged that the plaintiff's mortgage is null and void," as to a part of the property mentioned in it, and it is further "adjudged" that another part is subject to the mortgage. The judgment will, therefore, be reversed, because there is no decision made in conformity to the code.

2. When the case shall again be tried, it will be seen that the description of the property in the title bond or agreement between Ann Lowes and James G. Caldwell uses, as the controlling description of the property to be conveyed, these words : " which is more particularly known as the lot or part of lot on which the Hannibal hotel stood." The words, " part of lot" are, evidently, not intended to convey the idea that part only of the lot on which the Hannibal hotel stood was to be conveyed, but mean, that the ground on which the hotel had stood may have been a whole town lot or part of a lot, as the lots had been originally laid out. The whole of the lot on which the hotel stood was to be conveyed, whether it was a whole lot, according to the plan of the town, or part of such lot or parts of different lots. *Mellon* v. *Hammond,* anté, 191. As the evidence preserved in the record shows that the Hannibal hotel occupied all the lot which Bower, the defendant, now claims, this construction of the original agreement between Lowes and Caldwell will, probably, be decisive of the case.

The judgment is reversed, and the cause remanded for further proceedings.