PEARCE, Respondent, v. BURNS, *et al.*, Appellants.

1. Where a cause is tried by the court sitting as a jury, the finding of the facts should warrant the conclusion of law declared by the court and the judgment rendered; in reviewing the law of a case upon the facts found, the supreme court will not, from the facts, as found, infer or declare the existence of other facts.

*Error to St. Louis Court of Common Pleas.*

This was a suit commenced by attachment upon two promissory notes, executed by defendants, James Burns and Henry Burns, amounting in the aggregate to $283 50. The writ of attachment was predicated upon an affidavit that defendants had "fraudulently concealed or disposed of their property and effects so as to hinder and delay their creditors." This writ was served upon E. G. Roberts and Benjamin F. Kerr, of the firm of Roberts, Kerr & Co., as garnishees.

Defendants put in issue, by a plea, the truth of the facts alleged in the affidavit. Upon the issue thus raised, the court, sitting as a jury, found for plaintiff, and judgment by default was afterwards given for plaintiff for the full amount of the notes sued upon. The following is the finding of the facts by the court upon the issue raised by the plea to the affidavit: "That in January, 1854, the copartnership of Burns & Brother was composed of James Burns and Henry, and was doing business in Warsaw, Missouri; that said copartnership was at that time in failing circumstances; that it was indebted to the firm of

Houseman & Lowry, of St. Louis, for over eleven hundred dollars, cash advances, and was also indebted to the plaintiff and to others in St. Louis ; that Houseman, of the firm of Houseman & Lowry, went to Warsaw in that month to collect the debt due Houseman & Lowry ; that Houseman took a bill of sale of a lot of bacon and lard belonging to Burns & Brother, supposed to be worth at the time in Warsaw two thousand five hundred dollars, to secure the payment of the demand of Houseman & Lowry, and under said bill of sale took possession also of the property itself. The same had been previously stored by Burns & Brother, in a warehouse owned by Mr. Hicks. Houseman rented the warehouse of Hicks, and took the key thereof, and, on leaving Warsaw for St. Louis, left the key with the firm of Henry Boreland & Co., or with Mr. Blakey, as the agent of Houseman & Lowry. Before leaving Warsaw, Mr. Houseman was requested by the defendant to accept certain bills which he would draw in favor of some of the debtors of Burns & Brother in St. Louis, for the surplus, if there was any, as it was supposed there would be, after paying out of the proceeds of the sale of said property the demand of said Houseman & Lowry. Houseman refused to promise to accept said drafts, but agreed that out of said surplus he would pay such drafts to the extent of the surplus, in the order in which such drafts should be presented to him. In February, 1854, Mr. Simpson, as agent of the plaintiff, called on Burns & Brother, in Warsaw, to collect a demand that the plaintiff had against them. They gave to Simpson a draft on Houseman & Lowry, in favor of the plaintiff, for a part of his demand, and promised thereafter to pay the balance, assuring said Simpson, at the time, that said draft would be paid by Houseman & Lowry ; that they (Burns & Bro.) had put said property in the possession of Houseman & Lowry, and that there would be a surplus large enough to satisfy the draft. Said draft was presented by said Simpson, as plaintiff's agent, to said Houseman & Lowry, and the latter declined to accept, as the property had not yet arrived, or been shipped ; but promised, if there was a

sufficient surplus, to pay that draft, after the payment out of the surplus of two others that had been previously presented. Burns & Brother were insolvent at the time Simpson called on them, and continued to be so until after these transactions. In June following, the property in question was shipped in the name of and by Martin & Cook, of Warsaw, to Roberts, Kerr & Co., of St. Louis, under instructions from Martin (who was brother-in-law of James and Henry Burns) to pay out of the proceeds of the shipment to Houseman & Lowry their demand against Burns & Brother, and hold the balance for Martin & Cook. Said property was not shipped on the order or with the consent or knowledge of Houseman & Lowry. They never redelivered to Burns & Brother, or ever authorized any one to do so for them. The first knowledge they had of said shipment was after Martin & Cook came to St. Louis with it, consigned to Roberts, Kerr & Co. The latter firm paid out of the proceeds of the shipment to Houseman & Lowry their demand, amounting to $1258 02. The balance of the proceeds, amounting to $534 81, still remains in the hands of Roberts, Kerr & Co., to the credit of Martin & Cook, said latter having been stopped by judicial process. Burns & Brother knew of the shipment in the name of Martin & Cook to Roberts, Kerr & Co. How Martin & Cook got possession of the property, so as to ship it, the evidence does not disclose. Houseman & Lowry did not give any order for its shipment by Martin & Cook, or to Roberts, Kerr & Co. When the plaintiff ascertained that the property in question had been shipped to Roberts, Kerr & Co., instead of Houseman & Lowry, he instituted this suit by attachment.

"Upon the foregoing facts, the court finds that, at the commencement of this suit, the defendant had fraudulently concealed or disposed of his property or effects, so as to hinder and delay his creditors, and declares that the plaintiff is entitled to proceed with this action."

*Bay*, for plaintiff in error.

*Wickham & Snead*, for defendant in error.

LEONARD, Judge, delivered the opinion of the court.

The issue made in the cause by the plea in abatement was, whether the defendants had "fraudulently concealed or disposed of their property, so as to hinder or delay their creditors." Upon a trial by the court, the facts involved in it were specially found, and the court having pronounced upon these facts that the defendants had concealed or disposed of their effects as alleged, the only question now submitted to us is, whether the facts so found justify the conclusion. We do not think enough is found to enable us to declare, as a matter of law, against the defendants upon the plea in abatement, and for this reason the judgment must be reversed, and the cause remanded. We always regret being under the necessity of determining a case upon what may turn out to be a mere matter of form ; but the obligation we are under of deciding each case by general rules, applicable alike to all similar cases, sometimes imposes this necessity upon us, and the particular evil must then be submitted to on account of the general good that results from the strict adherence to principles. It may be that the inferior court was entirely satisfied upon the evidence before it, that the bacon and lard were put into the possession of Martin & Cook by the direction of Burns & Brother, to be shipped by the former, in their own names, to St. Louis, but upon a secret trust for the defendants ; and that the purpose of the defendants, in thus disposing of their property, was to conceal it from their creditors and secure it for their own use ; and that the court would have so expressly found, if their attention had been called to the matter. But yet no such intention or purpose or trust has been found as a fact in the case, nor indeed is it found that the defendants had any part or lot in the shipment to St. Louis, (although it seems they knew of it,) or in the disposition of the property here. The fact is, that no matter how the truth may be, there is nothing found incompatible with the idea that the defendants were guiltless of the charge imputed to them. It was for the plaintiff to prove his allega-

tion, and, although the circumstances stated in the finding may be sufficient not merely to arouse suspicion, but fully to justify a jury or a court sitting in the trial of the fact, in inferring that the shipment to St. Louis, and the disposition of the property there, was or has been suggested, yet *we* can not draw this inference as a mere natural presumption, and in this way supply the omission. We sit here, in cases like the present, to determine questions of law, and not to try matters of fact, and must therefore limit ourselves to pronouncing conclusions of law upon the facts found, and can not infer from these facts other facts by the force of mere natural presumptions, and then pronounce, upon the combined effect of both, the facts thus *inferred* and the facts expressly found.

It may not be improper here to advert for a moment to the views expressed by this court as to the character of the finding required by the law, when the trial is by the court, and as to the province and duty of this court, when the question here is as to the sufficiency of the finding to settle the issues of fact made between the parties. In Bates v. Bower, (17 Mo. 553,) it is said : " The decision is evidently a substitute for a special verdict, or the statement of facts in the old form of rendering a decree in chancery." The same views are reported in Farrar v. Lyon (19 Mo. 123) : " The finding of the court is like a special verdict in containing a finding of facts not of evidence." And in the St. Louis Hospital Association v. Williams' adm'r, (19 Mo. 612,) it is said : " In reviewing the law of a case upon the facts found, it is not the province of this court, from one or more facts, as found, to deduce the existence of another fact." Speaking alone for myself, I remark that perhaps it might have been better originally to have holden it to be sufficient to find the issuable facts alleged in the pleading, in the general form in which it was allowable to plead them, but this was settled otherwise ; and as this provision is omitted in the Revised Code of 1855, a reconsideration of the matter, even if it were allowable, would be of no practical value. Under the law as now settled, the facts constituting

the ultimate issuable fact put in issue between the present parties, must be so found that this court can pronounce, as a matter of law, that they constitute a fraudulent disposition or concealment of the party's property, within the meaning of the plaintiff's allegation; and we think that can not be done upon the present finding, even supposing that if we were sitting in the trial of the fact, the circumstances found would satisfy our consciences of the truth of the allegation.

The judgment is reversed, and the cause remanded.