**CENTERRE BANK OF BRANSON, Respondent,**

v.

**Curtis D. CAMPBELL and Debbie A. Campbell, Appellants.**

No. 15224.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 19, 1988.

Craig F. Lowther, Lisa A. Ghan, Lowther, Johnson, Lowther, Cully & Housley, Springfield, for appellants.

Carson W. Elliff, Yates, Mauck, Bohrer & Elliff, P.C., Springfield, for respondent.

CROW, Chief Judge.

On or about May 7, 1985, appellants ("the Campbells") signed the following document:

"PROMISSORY NOTE

$11,250.00 May 7, 1985

For value received, the undersigned jointly and severally as principals, promise to pay to the order of Strand Investment Company Eleven Thousand and Two Hundred and Fifty Dollars ($11,250.00) with interest thereon from date at the rate of 14% interest per annum, said principal and interest to be paid in annual installments as follows:

First Year–$3,750.00 +
$1,575.00 interest $5,325.00
Second Year–$3,750.00 +
$1,050.00 interest $4,800.00
Third Year–$3,750.00 +
$ 525.00 interest $4,275.00

Interest will be payable semi-annually.

Interest may vary with bank rates charged to Strand Investment Company.

If default is made in the payment of any annual installment when due, then the investor's participation in Notch Real Estate Partnership will be forfeited.

Privilege is given to pay all or any part of this note at any time without penalty.

This note may be used as collateral to obtain funds from a financial institution.

s/ Dowe Campbell [1]
Curtis D. Campbell

s/ Debbie A. Campbell
Debbie A. Campbell"

On May 13, 1985, the president and secretary of Strand Investment Company ("Strand") signed the following provision on the reverse side of the above document:

"I hereby Pledge and assign this promissory note in the amount $11,250.00 with recourse, dated this 13th day of May, 1985, to Centerre Bank of Branson, Branson, Mo.

s/ Ben P. Gaines
Strand Investment Co.
Ben P. Gaines, President

Attest:
s/ Betty Hawkins
Secretary, Betty Hawkins"

On June 30, 1986, Centerre Bank of Branson ("Centerre") sued the Campbells. Pertinent to the issues on this appeal, Centerre's petition averred:

"1. ... on [May 7,] 1985, the [Campbells] made and delivered to Strand ... their promissory note ... and thereby promised to pay to Strand ... or its order ... ($11,250.00) with interest thereon from date at the rate of fourteen percent (14%) per annum; that a copy of said promissory note is attached hereto ... and incorporated herein by reference.

2. That thereafter and before maturity, said note was assigned and delivered by Strand ... to [Centerre] for valuable consideration and [Centerre] is the owner and holder of said promissory note."

Centerre's petition went on to allege that default had been made in payment of the note and that there was an unpaid principal balance of $9,000, plus accrued interest, due thereon. Centerre's petition prayed for judgment against the Campbells for the unpaid principal and interest.

Each of the Campbells filed a separate answer.[2] Each answer stated:

"1. Defendant admits the allegations set forth in paragraph 1 of [Centerre's] petition.

2. Defendant is without sufficient knowledge or information to form a belief as to the averments set forth in paragraph 2 of [Centerre's] petition and, therefore, denies same."

Each answer went on to aver that the note was given for the purchase of an

---

1. We learn from the record on appeal that Dowe Campbell is the same person as Curtis D. Campbell.

2. At trial (January 29, 1987), Curtis D. Campbell referred to Debbie A. Campbell as his "former wife."

interest in a limited partnership to be created by Strand, that no limited partnership was thereafter created by Strand, and that by reason thereof there was "a complete and total failure of consideration for the said promissory note." Consequently, pled the answers, Centerre "should be estopped from asserting a claim against [the Campbells] on said promissory note because of such total failure of consideration for same."

The cause was tried to the court, all parties having waived trial by jury. At trial, the attorney for the Campbells asked Curtis D. Campbell what the consideration was for the note. Centerre's attorney[3] interrupted: "We object to any testimony as to the consideration for the note because it's our position that is not a defense in this lawsuit since the bank is the holder in due course."

The Campbells' attorney[4] conceded that if Centerre were a holder in due course, "then the defense of failure of consideration would not offer relief to the [Campbells]." He argued, however, that in order for Centerre to be a holder in due course, Centerre had to satisfy the requirements of § 400.3–302(1)(c), RSMo 1978, "which ... requires that they take an instrument without notice of any defense against ... it on the part of any person." The Campbells' attorney maintained that the body of the note contained "terms which create serious ambiguities as to the obligation of the [Campbells] to pay it." The "serious ambiguities" to which counsel referred were (1) the fact that the note did not state the specific dates that any of the three annual installments were due, and (2) the fact that the only provision in the note referring to the rights of the holder upon default was the provision that the Campbells' "participation in Notch Real Estate Partnership will be forfeited." Those alleged ambiguities, according to the Campbells' attorney, constituted "notice of their defense, when [Centerre takes] an instrument with such ambiguities in it."

The trial court ruled: "I really see no ambiguity in it, but for the purposes of this lawsuit and this trial I'm going to overrule [the] objection. As I understand it, first is the ruling of the Court as to whether or not [Centerre] is a holder in due course...." The trial court allowed Centerre a "continuing objection to all questions relating to the question of consideration."

Curtis D. Campbell then gave testimony that supported the allegation in his answer that he did not receive from Strand the interest in the limited partnership he had been promised in exchange for the note. He also testified, over Centerre's objection, that his understanding with Strand was that the only adverse consequence he would suffer if he failed to pay the note would be the forfeiture of his interest in the limited partnership.

Debbie A. Campbell thereafter testified, over Centerre's "same objection," that she was to receive an interest in the limited partnership as consideration for the note, and that she never received "anything of value" from Strand.

Centerre presented no evidence refuting the Campbells' testimony.

The trial court entered judgment in favor of Centerre and against the Campbells for $9,000, plus accrued interest and costs. The trial court filed no findings of fact or conclusions of law, none having been requested. The trial court did, however, include in its judgment a finding that Centerre "is a holder in due course of the promissory note sued upon."

The Campbells appeal, briefing four points. Their first three, taken together, present a single hypothesis of error consisting of these components: (a) the Campbells showed "by clear and convincing evidence a valid and meritorious defense in that there existed a total lack and failure of consideration for the promissory note in question," (b) Centerre acquired the note subject to such defense in that Centerre was not a

---

3. The attorney who represented Centerre at trial is not among the attorneys representing Centerre on this appeal.

4. The attorney who represented the Campbells at trial is not among the attorneys representing the Campbells on this appeal.

holder in due course, as one can be a holder in due course of a note *only if the note is a negotiable instrument,*[5] and (c) the note was not a negotiable instrument inasmuch as "it failed to state a sum certain due the payee."

In connection with component "(c)," the Campbells direct our attention to § 400.3–104, RSMo 1978, which provides, in pertinent part:

"(1) Any writing to be a negotiable instrument within this article must

. . . .

(b) contain an unconditional promise . . . to pay a sum certain in money and no other promise . . . by the maker . . . except as authorized by this article; and

. . . ."

The Campbells point out that § 400.3–106, RSMo 1978, deals with the term "sum certain," and that in paragraph 1 of the Uniform Commercial Code Comment regarding said section (volume 20A, V.A.M.S. (1965), p. 413) it is said:

"It is sufficient that at any time of payment the holder is able to determine the amount then payable from the instrument itself with any necessary computation. . . . The computation must be one which can be made from the instrument itself without reference to any outside source, and this section does not make negotiable a note payable with interest 'at the current rate.' "

The Campbells insist that the note in the instant case is not a negotiable instrument because it contains the provision: "Interest may vary with bank rates charged to Strand Investment Company." We henceforth refer to the theory advanced by the Campbells' first three points as their "primary theory of non-liability."

■ Centerre responds that the Campbells did not, in the trial court, preserve their primary theory of non-liability for appellate review. Centerre tenders three reasons in support of its argument. The first is that the Campbells, in their answers,

"admitted a fixed interest rate of fourteen percent."

Paragraph 1 of the separate answers of the Campbells (set forth *supra*) did indeed admit the allegations of paragraph 1 of Centerre's petition (also set forth *supra*). It will be recalled, however, that while paragraph 1 of Centerre's petition pled that the note provided for "interest thereon from date at the rate of fourteen percent (14%) per annum," said paragraph also averred that a copy of the note was attached to Centerre's petition and incorporated therein by reference. Consequently, among the facts admitted by the Campbells in paragraph 1 of their respective answers was the fact that the note provided that interest may vary with bank rates charged to Strand. We therefore reject Centerre's contention that paragraph 1 of the Campbells' respective answers forecloses them from asserting their primary theory of non-liability on appeal.

■ The second reason presented by Centerre in support of its thesis that the Campbells are barred from asserting their primary theory of non-liability on appeal is that the Campbells failed to plead or prove, in the trial court, that the provision for the variable interest rate prevented the note from being a negotiable instrument. In Centerre's words, "[T]he record is empty of any averment, testimony or argument regarding the failure of the note to contain a sum certain due to a varying interest rate." Centerre correctly observes, as noted earlier in this opinion, that the only two attacks on the note by the Campbells at trial were: (1) it did not state the specific dates that any of the three annual installments were due, and (2) the only provision thereof pertaining to the rights of the holder upon default was that the Campbells' participation in the partnership would be forfeited.

■ It is well settled that a defense not presented to nor passed upon by the trial court may not be presented on appeal. *Nulsen v. National Pigments & Chemical*

5. *Rotert v. Faulkner,* 660 S.W.2d 463, 468[3,4] (Mo.App.1983), teaches that if a written promise to pay money meets certain criteria it may properly be called a note even though it does not qualify as a negotiable instrument.

*Co.*, 346 Mo. 1246, 145 S.W.2d 410, 413[1] (1940); *State ex rel. Rothrum v. Darby*, 345 Mo. 1002, 137 S.W.2d 532, 543[19] (1940). It thus becomes obligatory for us to decide whether the Campbells' primary theory of non-liability is a "defense" within the meaning of the preceding rule.

We begin by recognizing that in Article 3, Uniform Commercial Code—Commercial Paper, §§ 400.3–101 to 400.3–805, RSMo 1978, the term "instrument" means a negotiable instrument. § 400.3–102(1)(e), RSMo 1978; *Means v. Clardy*, 735 S.W.2d 6, 10 (Mo.App.1987). This becomes important when one examines the definition of a holder in due course. Section 400.3–302(1), RSMo 1978, provides, in pertinent part:

> "A holder in due course is a holder who takes the instrument
>
> (a) for value; and
>
> (b) in good faith; and
>
> (c) without notice ... of any defense against ... it on the part of any person."

■ Bearing in mind that the term "instrument" in the above definition means *negotiable instrument*, it is obvious that in order for the holder of a note to be a holder in due course, the note must be a negotiable instrument. *Illinois State Bank v. Yates*, 678 S.W.2d 819, 823–24 (Mo.App. 1984).

The significance of being a holder in due course is demonstrated by § 400.3–305, RSMo 1978, which provides, in pertinent part:

> "To the extent that a holder is a holder in due course he takes the instrument free from
>
> . . . .
>
> (2) all defenses of any party to the instrument with whom the holder has not dealt
>
> . . . . .
> . . . ."

■ As explained in *Rotert v. Faulkner*, 660 S.W.2d 463, 468[2] (Mo.App.1983), a note that is not a negotiable instrument may, like a negotiable instrument, be transferred by assignment. The assignee of a note that is not a negotiable instrument, however, takes it subject to all defenses the maker may have against the payee prior to notice of the assignment. *Id.*

With those precepts in mind, we examine the pleadings.

Centerre's petition, quoted in pertinent part *supra*, avers that Centerre is the "owner and holder" of the note. Nowhere in Centerre's petition do we find an allegation that Centerre is a holder in due course. The Campbells' separate answers, as we have seen, pled the defense of failure of consideration. Assuming, without deciding, that the Campbells' defense would have been sufficient to defeat a claim by Strand against them on the note, the same would be true of a claim against them by Centerre on the note *unless Centerre were a holder in due course*. If Centerre enjoyed that status, it would, by virtue of § 400.3–305, *supra*, hold the note "free from" the Campbells' defense against Strand.

It follows that the Campbells, in asserting that Centerre is not a holder in due course (because the note is not a negotiable instrument) are not raising a defense. Instead, they are availing themselves of the rule that their pleaded defense of failure of consideration that could have been employed against Strand can be asserted with equal effect against Centerre.

It is manifest from the record in the instant case that Centerre claimed to be a holder in due course in order to cut off the Campbells' defense of failure of consideration. This is evident from the objection lodged by Centerre's attorney when the Campbells undertook to testify that Strand never tendered to them the interest they had been promised in the limited partnership. Centerre's attorney, as reported earlier, objected that failure of consideration was "not a defense" in that Centerre "is the holder in due course."

The above rationale demonstrates that the Campbells' primary theory of non-liability is not a "defense" that the Campbells were obliged to present at trial in order to assert on appeal. On the contrary, once the Campbells pled their defense of failure of consideration and presented evidence in

support thereof, it was essential that the note be a negotiable instrument if Centerre were to avert such defense.[6] Centerre's contention that the Campbells' primary theory of non-liability was not preserved for appellate review because the Campbells failed to plead and prove it in the trial court is without merit.

The third reason advanced by Centerre in support of its contention that the Campbells are barred from asserting their primary theory of non-liability on appeal is that the Campbells failed to include it in their motion for new trial. Said motion tersely stated that the trial court's finding that Centerre was a holder in due course "is in error, is without support in the evidence and is against the weight of the evidence." The motion supplied no clue as to wherein and why the finding suffered such afflictions.

■ In a case tried without a jury, a motion for new trial is not necessary to preserve any matter for appellate review. Rule 73.01(b), Missouri Rules of Civil Procedure (18th ed. 1987); *Don L. Tullis & Associates, Inc. v. Gover*, 577 S.W.2d 891, 893[1] (Mo.App.1979). If a motion for new trial is filed, the fact that it may be imperfect does not prejudice the appellant's position on appeal. *Id.; South Side Plumbing Co. v. Tigges*, 525 S.W.2d 583, 586–87[1] (Mo.App.1975). That being so, the Campbells are not foreclosed from asserting their primary theory of non-liability on appeal even though it was not enunciated in their motion for new trial.

Having rejected all of Centerre's arguments that the Campbells failed to preserve their primary theory of non-liability for appellate review, we shall examine such theory for merit.

■ We have already noted that if Centerre is not a holder in due course, the Campbells can assert the defense of failure of consideration against Centerre to the

same degree they could have asserted it against Strand. We have also spelled out that Centerre cannot be a holder in due course if the note is not a negotiable instrument. The pivotal issue, therefore, is whether the provision that interest may vary with bank rates charged to Strand prevents the note from being a negotiable instrument.

■ Having reached that issue, it is appropriate to acknowledge the scope of our review in this judge-tried case. The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976).

■ With that standard in mind, we observe that in the instant case the issue of whether the provision that interest may vary prevented the note from being a negotiable instrument is a question of law. That is, such issue does not hinge on the resolution of conflicting evidence by the trial court; it is determinable by applying the law regarding negotiable instruments to the note itself.

We have already set forth, in pertinent part, § 400.3–104, which provides that a note, to be a negotiable instrument, must contain, among other things, an unconditional promise to pay a sum certain in money. Regarding the term "sum certain," § 400.3–106, RSMo 1978, provides, in pertinent part:

"(1) The sum payable is a sum certain even though it is to be paid

(a) with stated interest or by stated installments; or

(b) with stated different rates of interest before and after default or a specified date; or

---

**6.** We do not imply that when the Campbells filed their answers averring failure of consideration, Centerre was required to file a reply alleging it was a holder in due course in order to claim such status at trial. Rule 55.01, Missouri Rules of Civil Procedure (18th ed. 1987), which sets forth the pleadings required in civil actions, makes no provision for a reply except where there is a counterclaim denominated as such or where the court orders a reply. *Cf. Smyth v. City of St. Joseph*, 297 S.W.2d 578, 580–81[3] (Mo.App.1956).

(c) with a stated discount or addition if paid before or after the date fixed for payment; or

(d) with exchange or less exchange, whether at a fixed rate or at the current rate; or

(e) with costs of collection or an attorney's fee or both upon default.

. . . ."

We earlier quoted a relevant segment of the Uniform Commercial Code Comment pertaining to the above statute. That Comment, it will be recalled, provided that in order for a note to satisfy the "sum certain" requirement, the holder must be able, at time of payment, to determine the amount due from the instrument itself with any necessary computation. The computation must be one that can be made from the instrument without reference to any outside source.

Neither side has cited a Missouri case applying §§ 400.3–104 and 400.3–106 to a note containing a provision similar to: "Interest may vary with bank rates charged to Strand." Our independent research has likewise proven fruitless. There are, however, instructive decisions from other jurisdictions.

In *Taylor v. Roeder*, 234 Va. 99, 360 S.E.2d 191 (1987), a note provided for interest at "[t]hree percent (3.00%) over Chase Manhattan Prime to be adjusted monthly." A second note provided for interest at "3% over Chasemanhattan [sic] prime adjusted monthly." Applying sections of the Uniform Commercial Code adopted by Virginia identical to §§ 400.3–104 and 400.3–106, RSMo 1978, the court held the notes were not negotiable instruments in that the amounts required to satisfy them could not be ascertained without reference to an extrinsic source, the varying prime rate of interest charged by Chase Manhattan Bank. *Id.* 360 S.E.2d at 194–95[4].

In *Branch Banking and Trust Co. v. Creasy*, 301 N.C. 44, 269 S.E.2d 117 (1980), a guaranty agreement provided that the aggregate amount of principal of all indebtedness and liabilities at any one time for which the guarantor would be liable shall not exceed $35,000. The court, emphasiz-

ing that to be a negotiable instrument a writing must contain, among other things, an unconditional promise to pay a sum certain in money, held the agreement was not a negotiable instrument. The opinion recited that for the requirement of a sum certain to be met, it is necessary that at the time of payment the holder be able to determine the amount which is then payable from the instrument itself, with any necessary computation, without reference to any outside source. *Id.* 269 S.E.2d at 122[5]. It is essential, said the court, for a negotiable instrument "to bear a definite sum so that subsequent holders may take and transfer the instrument without having to plumb the intricacies of the instrument's background. *Id.*

A similar result was reached in *Shepherd Mall State Bank v. Johnson*, 603 P.2d 1115 (Okla.1979), where a guaranty agreement provided that the guarantor would pay "all indebtedness which the debtor now is or may hereafter from time to time become obligated to pay." Ruling that the agreement was not a promise to pay a sum certain in money because the amount was adjustable, the court held the agreement was not a negotiable instrument, consequently its holder could not be a holder in due course. *Id.* at 1117[1].

In *Brazos River Authority v. Carr*, 405 S.W.2d 689 (Tex.1966), a series of bonds bore interest at one percent per annum plus, on supplemental coupons, "up to 2½% additional interest per annum to the extent net revenues are available therefor." Applying sections of the Uniform Commercial Code adopted by Texas identical to §§ 400.3–104 and 400.3–106, RSMo 1978, the court held the bonds were not negotiable instruments. *Id.* at 695[10].

In *A. Alport & Son, Inc. v. Hotel Evans, Inc.*, 65 Misc.2d 374, 317 N.Y.S.2d 937 (Sup. Ct.1970), a note contained the notation "with interest at bank rates." Applying a section of the Uniform Commercial Code adopted by New York identical to § 400.3–104, RSMo 1978, the court held the note was not a negotiable instrument in that the amount of interest had to be estab-

lished by facts outside the instrument. *Id.* 317 N.Y.S.2d at 939–40[1].

In the instant case, the Campbells insist that it is impossible to determine from the face of the note the amount due and payable on any payment date, as the note provides that interest may vary with bank rates charged to Strand. Consequently, say the Campbells, the note is not a negotiable instrument, as it does not contain a promise to pay a "sum certain." § 400.3–104(1)(b).

Centerre responds that the provision that interest may vary with bank rates charged to Strand is not "directory," but instead is merely "discretionary." The argument begs the question. Even if one assumes that Strand would elect not to vary the interest charged the Campbells if interest rates charged Strand by banks changed, a holder of the note would have to investigate such facts before determining the amount due on the note at any time of payment. We hold that under §§ 400.3–104 and 400.3–106, *supra,* and the authorities discussed earlier, the provision that interest may vary with bank rates charged to Strand bars the note from being a negotiable instrument, thus no assignee thereof can be a holder in due course. The trial court therefore erred as a matter of law in ruling that Centerre was a holder in due course. This conclusion brings us to the question of whether such error compels reversal.

 The trial court, of course, was free to disbelieve the Campbells' testimony that there was a failure of consideration. In a judge-tried case, credibility of witnesses and the weight to be given their testimony is for the trial court, which is free to believe none, part or all of the testimony of any witness. *Paramount Sales Co., Inc. v. Stark,* 690 S.W.2d 500, 501[2] (Mo.App. 1985). If the maker of a note relies exclusively on the defense of failure of consideration, and fails to prove it, an assignee of such note, as we have seen, can recover irrespective of whether he is a holder in due course. However, once the trial court in the instant case ruled that Centerre was a holder in due course, there was no need

for the trial court to determine whether the Campbells' testimony was credible or, if so, whether Strand's failure to tender to the Campbells the promised interest in the limited partnership was a *total* failure of consideration, thereby supplying the Campbells a defense to the note. *Empire Gas Corp. v. Small's LP Gas Co.,* 637 S.W.2d 239, 246[18] (Mo.App.1982). Nothing in the record suggests that the trial court ever reached those issues, and the only plausible inference is that it did not.

We therefore hold that inasmuch as (1) the judgment was based on an error of law, and (2) such error resulted in the issues identified in the preceding paragraph remaining unaddressed, the judgment must be reversed and the cause must be remanded for a new trial. *Anderson v. Dyer,* 456 S.W.2d 808, 814–15[10] (Mo.App.1970).

Having come to that conclusion, our task would normally be finished. However, as shall appear *infra,* one final issue must be resolved.

 The Campbells, in their fourth point, aver that the trial court erred in awarding Centerre a money judgment against them on the note because a money award "is equivalent to a double recovery for [Centerre] in that [Centerre] retained possession of the collateral and in addition obtained a judgment through a suit on the terms of the note." Explaining that contention, the Campbells asseverate that the evidence showed an intent by Strand and them to create a security interest in favor of Strand in the limited partnership interest which was to pass to the Campbells in exchange for the note. That was demonstrated, say the Campbells, by the testimony of Curtis D. Campbell that his understanding was that the only adverse consequence he would suffer if he failed to pay the note would be the forfeiture of his interest in the partnership. Additionally, the Campbells remind us that the note provides: "If default is made in the payment of any annual installment when due, then the investor's [sic] participation in Notch Real Estate Partnership will be forfeited." The Campbells maintain that they and Strand intended that Strand "take back a

security interest in the limited partnership interest which was to be transferred to the Campbells." Upon default, according to the Campbells, Strand would retain the collateral—the limited partnership interest—as damages. Strand could not, so the Campbells contend, retain the collateral *and* obtain a judgment for the unpaid balance of the note. Insisting that Centerre can have no greater rights against them than Strand, the Campbells argue that to allow Centerre to retain the collateral and obtain a money judgment "would amount to a double recovery."

Centerre responds that the Campbells' "double recovery" defense was not preserved for review, as it was neither pleaded in the trial court nor supported by evidence there. We must address these issues because if such defense has been preserved for appellate review, and if it be meritorious, we are obliged to finally dispose of the case by an outright reversal without remand. Rule 84.14, Missouri Rules of Civil Procedure (18th ed. 1987).

Centerre's assertion that the "double recovery" defense was not pled by the Campbells is correct, and the Campbells do not point to any provision in their respective answers showing otherwise. They argue, however, that the "double recovery" defense was raised at trial through the testimony of Curtis D. Campbell, heretofore synopsized.

We disagree.

As noted earlier, the Campbells' attorney argued at trial that the note's provision that the Campbells' participation in Notch Real Estate Partnership would be forfeited upon default in payment of the note was one of the "serious ambiguities" constituting notice of the Campbells' defense of failure of consideration. We find nothing in the testimony or in the argument of the Campbells' attorney at trial that articulates

the sophisticated "double recovery" defense set forth in their fourth point.

We explained *supra* that a defense not presented to nor passed upon by the trial court may not be presented on appeal. That principle forecloses the Campbells' fourth point.[7]

The judgment is reversed and the cause is remanded for a new trial.

GREENE, P.J., and HOLSTEIN, J., concur.

---

7. An alert reader will have noticed two other extraordinary features about the note, unmentioned in this opinion. First, the note provides in one place that principal and interest are to be paid in annual installments; in another place it provides that interest will be payable semiannually. Second, there is no acceleration clause providing that if default be made in the payment of any installment when due, then all remaining installments shall become due and payable immediately. It would have thus been arguable that, at time of trial, only the first year's installment of principal and interest was due. No issue is raised, however, regarding any of these matters, and we decline to consider them *sua sponte*.