## McDONALD COUNTY MERCANTILE BANK, Respondent,

v.

## Oliver B. HARP and Joyce M. Harp, Appellants.

### No. 16006.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 6, 1989.

Motion for Rehearing or Transfer to
Supreme Court Denied
Oct. 27, 1989.

W. Henry Johnson, Andrew Wood, Douglas, Douglas & Johnson, Neosho, for appellants.

Robert W. Evenson, Evenson, Carlin & LePage, Pineville, for respondent.

CROW, Presiding Judge.

Defendants Oliver B. Harp and Joyce M. Harp appeal from a judgment denying their motion to set aside a judgment against them in the principal amount of $187,931.20 in favor of McDonald County Mercantile Bank ("the Bank"). Defendants maintain the trial court erred in refusing to set aside the money judgment in that they were entitled to written notice from the court clerk that said judgment had been entered but the clerk failed to send such notice, and they showed good cause for setting the judgment aside.

The litigation began June 30, 1986, when the Bank filed suit against defendants on four promissory notes. Defendants retained Abe R. Paul, an attorney-at-law, to represent them. Paul filed an answer on defendants' behalf July 28, 1986.

The deposition of defendant Oliver B. Harp was taken September 5, 1986, at

Paul's office. Harp admitted he was in default on all the notes and was unable to pay them.

On July 7, 1987, the clerk of the circuit court sent written notice to Paul and the Bank's lawyer that the case was set for "non-jury trial" August 17, 1987. Paul received the notice July 8 or 9.

On the trial date the Bank's lawyer called Paul, asking whether he was going to appear. Neither Paul nor the defendants attended the trial. The Bank appeared by its lawyer and presented evidence.

The next day the Bank's lawyer sent a letter to the trial court, accompanied by a proposed judgment for entry. The Bank's lawyer sent Paul a copy of each. On August 19, 1987, the trial court signed and filed the proposed judgment supplied by the Bank's lawyer, without change.

On November 20, 1987, defendants, represented by their present counsel, filed a "petition" to set aside the judgment on sundry grounds, none of which are pertinent to this appeal. Twenty days later defendants filed a motion to set aside the judgment on the ground that they did not receive notice of its entry from the court clerk as required by Rule 74.78, Missouri Rules of Civil Procedure (18th ed. 1987), which read:

> "Upon the entry of [a] ... judgment, the clerk shall serve a notice of the entry by mail in the manner provided in Rule 43.01 upon every party affected thereby who is not in default for failure to appear and who was not present in court in person or by attorney at the time of the entry of such ... judgment. If such notice is not given, said ... judgment shall be set aside for good cause shown upon written motion filed within 6 months from the entry of the ... judgment."

After further procedural steps that need not be enumerated, the trial court conducted an evidentiary hearing on the issues raised by defendants' post-judgment pleadings. At the hearing defendant Oliver Harp testified he never received notice of the trial setting and first became aware of

the judgment on October 5 or 6, 1987, when his wife's father told him about it. Harp avowed he never received a copy of the judgment from the court clerk.

Paul testified he did not inform defendants of entry of the judgment until October of 1987, when he encountered Oliver Harp on the street by chance. Paul's testimony: "[H]e inquired about the judgment. And I told him that to the best of my knowledge there had been and that I would check my file, which I did a day or two [later] and sent him a letter." As to why neither he nor defendants appeared at trial August 17, 1987, Paul's testimony was:

"Q. ... Did Mr. Harp or his wife or either of them for the other, notify you or advise you not to contest this matter and not to—not—they didn't expect to go to trial?

A. I can't say that it was ever put in those words.

Q. But was that your understanding?

A. That was my understanding.

Q. As their attorney then—

A. My understanding was ... that I would do the best I could to put it off as long as possible, and that—and that there really wasn't a contested issue with respect to the amount that was due.

Q. All right. So, the, the—

A. And that's, frankly, the reason I didn't send them the notice [of the trial setting].

Q. ... was it your understanding from your clients, whom you represented in this case, that they would default and not contest it at trial?

A. That, that was my understanding and that was the reason the notice wasn't sent.

. . . .

Q. Mr. Paul, whatever your understanding was, the Harps never told you to let a judgment be entered against them, did they?

A. No, they didn't say that.

. . . .

Q. ... And in fact, you did not notify them of a judgment until more than 30 days after it was entered?

A. That's also true."

The trial court's judgment denying defendants' prayer to set aside the judgment of August 19, 1987, was accompanied by findings of fact and conclusions of law. The findings of fact included these:

"8. That Defendants Harp instructed their Attorney, Abe Paul, to delay this case as long as he could and that they would not appear nor contest the case at trial.

. . . .

17. That there is no record in the file of the case that the Clerk of the Circuit Court sent a notice of the Entry of Judgment to Oliver Harp and Joyce Harp.

. . . .

19. That Attorney Abe R. Paul did not receive a signed copy of the Judgment Entry.

. . . .

21. That [defendants] learned of the Judgment being entered sometime in October, 1987 and made an inquiry to Attorney Abe R. Paul when [Oliver Harp] saw [Paul] ... in Neosho, Missouri.

. . . .

23. That at all times after August 18, 1987, Attorney Abe R. Paul knew that the Judgment was entered and for what amounts."

The trial court's conclusions of law included these:

"1. That Attorney Abe R. Paul was the Attorney of record for Defendants Oliver Harp and Joyce Harp and represented them at all times through the trial of this case held on August 17, 1987.

2. That Harp's [sic] counsel had been duly notified of the trial setting on [the Bank's] action and this notice was binding on the Harp's [sic].

. . . .

5. That counsel for Harp had actual knowledge of the form of the Judgment Entry, the amounts provided therein, and that knowledge and notice was binding on the Harp's [sic].

. . . .

8. That there is no evidence of abdondment [sic] of the Harp's [sic] by counsel, Abe R. Paul."

Rule 74.78, Missouri Rules of Civil Procedure (18th ed. 1987), quoted *supra*, cited by defendants in their motion in the trial court to set aside the judgment, was repealed effective January 1, 1988. Missouri Rules of Court (19th ed. 1988), p. 287. The subject matter of former Rule 74.78 has, since January 1, 1988, been covered by Rule 74.-03, Missouri Rules of Civil Procedure (19th ed. 1988), which in all respects pertinent here is identical to former Rule 74.78.

It has been held that under former Rule 74.78 a party who filed an answer but thereafter failed to attend court for trial was not in default, consequently such party was entitled to notice of entry of judgment. *Vetter & Associates, Inc. v. Dimarco Corp.*, 733 S.W.2d 459, 461[1, 2] (Mo.App. 1986). For the purpose of our disposition of the instant appeal we shall assume, without deciding, that former Rule 74.78 required the court clerk to send defendants notice of entry of the judgment by mail "in the manner provided in Rule 43.01."

Rule 43.01(b), Missouri Rules of Civil Procedure (18th ed. 1987), which was in effect at the time of entry of the judgment of August 19, 1987, and which remains unchanged, provides:

"Whenever under these rules ... service is required ... to be made upon a party represented by an attorney of record, the service shall be made upon the attorney unless service upon the party himself is ordered by the Court...."

The record supplied us contains no order by the trial court that service of the notice of judgment under former Rule 74.78 was to be made by the clerk on defendants themselves instead of on their attorney of record. Accordingly, the most defendants were entitled to under former Rule 74.78 was that notice of entry of the judgment be sent by the clerk to lawyer Paul.

The scope of our review in this court-tried action is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evi-

dence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

The trial court, as we have seen, found that while Paul did not receive a signed copy of the judgment entry, Paul nonetheless knew, at all times after August 18, 1987, that the judgment had been entered and the amount thereof. There was, of course, ample evidence to support that finding. It is thus evident that Paul's failure to receive notice of entry of the judgment from the court clerk per former Rule 74.78 did not deprive him of any knowledge the notice would have imparted, as he already possessed that information.

■ The trial court correctly ruled that Paul's knowledge about the judgment was binding on defendants. *Cf. Weber v. Hoesch*, 603 S.W.2d 60, 61[1] (Mo.App. 1980); *State v. Pinson*, 717 S.W.2d 266, 269[3, 4] (Mo.App.1986).

*Thorpe v. Meier*, 755 S.W.2d 683 (Mo. App.1988), was an appeal from an order denying a motion under former Rule 74.78 to set aside a judgment for failure of the court clerk to serve notice of its entry. The opinion held that when a party is not present in the trial court on the date of trial and the trial court proceeds to hear the adverse party's evidence and subsequently enters judgment against the absent party, the latter, to be entitled to an order setting aside the judgment, must show that he has a meritorious defense and had good reason or excuse for failing to be present in court when required. *Id.* at 691[2]. *Accord: Hinson v. Hinson*, 518 S.W.2d 330, 332[4] (Mo.App.1975). When the absent party's application to set aside such judgment has been denied by the trial court, the trial court's action will not ordinarily be disturbed unless the above elements are so clearly apparent that it is manifest that the refusal to set the judgment aside was arbitrary. *Thorpe*, 755 S.W.2d at 691; *Hinson*, 518 S.W.2d at 332[5].

As noted earlier, Paul testified his understanding was that he would do the best he could to put the trial off as long as possible, that there was no contested issue with respect to the amount defendants owed the Bank, and that defendants would not contest the case at trial. The trial court obviously believed Paul's testimony, as demonstrated by the trial court's finding that defendants instructed Paul to delay the case as long as he could and they would not appear or contest the case at trial. The credibility of Paul's testimony and the weight to be given it was for the trial court. *Centerre Bank of Branson v. Campbell*, 744 S.W.2d 490, 498[12] (Mo. App.1988); *Paramount Sales Co., Inc. v. Stark*, 690 S.W.2d 500, 501[2] (Mo.App. 1985). We may not substitute our judgment for that of the trial court on credibility issues. *Estate of Graves*, 684 S.W.2d 925, 928[2] (Mo.App.1985); *Atkins v. Clark*, 644 S.W.2d 365, 369[5] (Mo.App. 1982).

Furthermore, defendants' answer pled no affirmative defense; it simply denied the Bank's claim on the four notes. Defendant Oliver Harp, it will be recalled, conceded on deposition eleven months before trial that he was in default on all the notes and was unable to pay them. Nowhere in his testimony at the evidentiary hearing did Harp ever say he discussed with Paul the assertion of any affirmative defense against the Bank's claim. Harp did testify that while the suit was pending the Bank, with his consent, picked up certain collateral—primarily farm machinery—and he never received notice of its sale. He did not, however, mention any discussion with Paul about whether this could be pled as a defense. Moreover, Harp did not refute Paul's testimony that Paul understood from defendants that he was to put the trial off as long as possible, that there was no contested issue with respect to the amount owed the Bank, and that defendants would not contest the case at trial.

Defendant Joyce Harp was present in person at the evidentiary hearing but did not testify.

■ The trial court held defendants had shown no good cause for setting aside the judgment of August 19, 1987. Given (1) the admission by defendant Oliver Harp in his deposition that he was in default on all

notes and was unable to pay them, (2) the absence of any averment of an affirmative defense in defendants' answer, (3) the lack of any testimony that defendants and Paul ever discussed the possibility of raising as a defense the sale of the collateral without notice, (4) the failure of defendants to refute Paul's testimony that he was to put the trial off as long as possible, that there was no contested issue with respect to the amount defendants owed the Bank, and that defendants would not contest the case at trial, and (5) the fact that Paul knew at all times after August 18, 1987, that judgment was entered against defendants and the amount thereof, we hold that the trial court's determination that defendants had failed to show good cause for setting aside the money judgment per former Rule 74.78 is supported by substantial evidence, is not contrary to the weight of the evidence, and that the trial court neither erroneously declared nor erroneously applied the law.

The judgment of the trial court refusing to set aside the money judgment is affirmed.

HOLSTEIN, C.J., and GREENE, J., concur.