**Richard D. KELLER, Appellant,**

v.

**FRIENDLY FORD, INC., Respondent.**

**No. 16309.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 10, 1990.

Richard D. Keller, pro se.

Christopher J. Stark, Springfield, for respondent.

CROW, Presiding Judge.

Plaintiff Richard D. Keller sued defendant Friendly Ford, Inc., for $591.13. Trial before an associate circuit judge sitting as "small claims court," § 482.300.2,[1] produced a judgment for plaintiff in the amount prayed, plus costs. Defendant filed a timely application for trial de novo. § 482.365.2. The cause was tried anew—

---

1. References to statutes are to RSMo 1986.

without a jury—before a different associate circuit judge, resulting in judgment for defendant. This appeal followed.

Plaintiff's testimony at the trial de novo [2] established that he bought a "new Taurus station wagon" from defendant in late 1986, that during the ensuing months the engine stopped running on numerous occasions during trips to sundry locations, that when such episodes occurred the Taurus was towed to various Ford agencies, and that all efforts by the agencies to correct the problem proved futile.

At the "beginning of the summer" of 1987 plaintiff had to go from his home in Eureka Springs, Arkansas, to Tulsa to bring his daughter home from college. At that time plaintiff's Taurus was at defendant's place of business in Springfield, Missouri, where defendant's mechanics were attempting to identify and fix the defect. At plaintiff's request defendant's new car sales manager, Dan Wise, loaned plaintiff an automobile from defendant's "rental department" for the trip to Tulsa, at no cost to plaintiff.

Defendant's efforts to solve the Taurus mystery were unsuccessful. At that point plaintiff appealed to Ford's "Consumer Appeals Board" for a full refund or replacement of the vehicle "because obviously it was a lemon."

In August, 1987, plaintiff's Taurus was at defendant's place of business, having been left there by plaintiff while he awaited the Board's decision. Plaintiff had "dropped all insurance" on the Taurus because he "was not going to ever take this car back again." Plaintiff's daughter was planning to attend college in Colorado and plaintiff intended to take her there. Other members of plaintiff's family were to accompany them on the trip.

While the evidence as to the date the journey was to begin is ambiguous, we have deduced it was to commence Monday, August 24, 1987. Plaintiff testified that the week before the departure date he telephoned Dan Wise and informed Wise he (plaintiff) could not risk taking the Taurus to Colorado "in the heat of the summer" because of the danger it would break down. Plaintiff testified Wise assured plaintiff he could "have a loaner vehicle" for the journey. Plaintiff testified that the day following this conversation defendant's assistant new car manager, Jay Loveland, phoned plaintiff confirming that the "loaner" would be available for plaintiff to pick up at defendant's place of business on the Monday morning the excursion was to begin.

On the appointed date plaintiff loaded his family, including a baby granddaughter, into an "old clunker" he owned and drove the 85 miles from his home to defendant's place of business. Upon arrival plaintiff learned Dan Wise was out of town. Plaintiff talked to Earl Wise, father of Dan Wise and president of defendant. The elder Wise refused to supply plaintiff a free automobile for the trip to Colorado. Plaintiff testified he then conferred with assistant new car manager Loveland. Loveland, according to plaintiff, went to Earl Wise's office and returned a few minutes later with the report that Wise would not authorize the loan of an automobile to plaintiff. Defendant did offer to rent plaintiff an automobile but plaintiff declined.

At that point, testified plaintiff, he had no choice but to embark for Colorado in his Taurus "and hope and pray it didn't break down on the trip." Plaintiff, with his passengers and baggage, thereupon departed Springfield in the Taurus. When they reached Mission, Kansas, "in the middle of rush-hour traffic" the Taurus stopped running, backing traffic up "about two miles." The Taurus was towed to the nearest Ford agency. There it "started right up," and the mechanics could find no problem with it.

The next day plaintiff and his passengers resumed the journey. Before they got out of town the Taurus stopped running. It was towed to the same Ford agency, where it remained a couple of days. During that interval plaintiff rented a small car from the agency "to run around in while we were there."

2. There is, of course, no transcript of the testimony at the first trial.

On Friday, August 28, 1987, the agency still had not identified the source of the trouble. Plaintiff thereupon rented a van from the agency, used the van for the journey to Colorado, and returned the van to the agency September 2, 1987. At that time plaintiff was informed by the agency's service manager that while plaintiff was gone the manager had discovered that the problem with the Taurus was the distributor cap. The manager replaced it and the Taurus ran flawlessly thereafter.

Upon returning to Springfield in the Taurus plaintiff went to defendant's place of business and demanded of Dan Wise that defendant reimburse plaintiff for the cost of renting the van and the small car in Kansas. Those expenses totaled $591.13. Plaintiff's demand was rejected, precipitating this suit.

The small claims judge—who, it will be recalled, awarded plaintiff the $591.13—set forth his rationale for the judgment in a letter to the parties. The judge found that Dan Wise had indeed promised plaintiff a free vehicle for the Colorado journey. The judge noted that the promise was unsupported by consideration and that such promises are generally unenforceable. However, said the judge, that doctrine is not without exceptions. The judge explained:

> "One exception is called the doctrine of 'promissory estoppel.' This doctrine says that if the person receiving the promise, though he gives no consideration in return, acts in reliance on the promise to his detriment, then the promise is enforceable. In this case, I believe the plaintiff did act in reliance on the promise. He came up to Springfield in a vehicle which was not capable of taking him on the trip. He made no other arrangements for transportation for this trip, like airline tickets or bus tickets. He loaded up his family and his luggage and headed for Springfield. He did all this while relying on Friendly Ford's promise. These actions were to his detriment since they placed him in a position where his only alternative was to take

off in a car which he thought to be unreliable (which proved to be true) and eventually caused him to have· to make other rental arrangements (not to mention the lost time ...)."

At the trial de novo plaintiff did not rely on any clause in the warranty on the Taurus in support of his contention that defendant was obliged to provide him a free vehicle for the Colorado trip, nor did plaintiff point to any other contractual provision imposing such an obligation on defendant.

The de novo judge made no findings of fact or conclusions of law, none having been requested. *See:* Rule 73.01(a)(2).[3] The judgment entered by the de novo judge merely said: "Judgment for Defendant at cost of Plaintiff."

Plaintiff's sole point relied on in this appeal reads:

> "The trial court erroneously interpreted or applied the law and erred in reversing the small court claims [sic] judgment for plaintiff, and the judgment is against the overwhelming weight of the evidence, in that promissory estoppel was clearly established and applicable. The undisputed evidence was that [plaintiff] was promised and provided a free loaner car for an identical reason in June of 1987, and when his new car still had not been properly repaired in August and could not be counted on for reliable transportation, he relied on [defendant's] promise to provide a substitute loaner car once again under the same conditions and for the same length of time, at no further cost. The uncontradicted evidence thus showed a prior oral contract with identical terms which was performed, and upon which [plaintiff] relied in commencing his trip without making provision for a reliable vehicle due to [defendant's] promise to once again provide a free loaner car. When this promise was refused, plaintiff suffered detrimental and unwarranted delays, anxiety, anguish, and expense."

Plaintiff begins his argument by citing two early decisions of the Supreme Court

<hr>

3. Rule references are to Missouri Rules of Civil Procedure (19th ed. 1988).

of Missouri—*Bates v. Bower*, 17 Mo. 550 (1853), and *Derrick v. Jewett*, 21 Mo. 444 (1855)—for the proposition that when a cause is tried by the court without a jury the judgment will be reversed on appeal where the record shows no findings of fact. Plaintiff maintains the absence of findings by the de novo judge is alone sufficient to reverse the judgment.

Whatever the rule may have been at the time *Bates* and *Derrick* were decided, it no longer prevails. Under Rule 73.01(a)(2) all fact issues in a judge-tried case upon which no specific findings are made shall be considered as having been found in accordance with the result reached. *Goldstein v. Studley*, 452 S.W.2d 75, 78–79[5] (Mo.1970).

At the trial de novo plaintiff's testimony that he had been promised a free automobile for the Colorado trip was contradicted by Dan Wise and Jay Loveland, each of whom avowed no such promise was made. Credibility of the witnesses and the weight to be given their testimony was for the trial court, which was free to believe none, part or all of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988); *Centerre Bank of Branson v. Campbell*, 744 S.W.2d 490, 498[12] (Mo.App.1988); *Paramount Sales Co., Inc. v. Stark*, 690 S.W.2d 500, 501[2] (Mo.App. 1985). If the de novo judge found no promise of a free automobile for the Colorado trip was made by Dan Wise or Jay Loveland to plaintiff, this finding alone would have been a sufficient reason for the denial of plaintiff's claim.

Plaintiff maintains his testimony was more credible than that of Messrs. Wise and Loveland. That, however, is not for us to decide. We may not substitute our judgment for that of a trial court on credibility issues. *Strauss v. Strauss*, 755 S.W.2d 742, 743[1] (Mo.App.1988); *State ex rel. Webster v. Cornelius*, 729 S.W.2d 60, 65[5] (Mo.App.1987). The choice between conflicting evidence is for the trial court. *In Interest of R.E.M.*, 712 S.W.2d 398, 402[3] (Mo.App.1986); *Lovan v. City of Festus*, 679 S.W.2d 931, 932[4] (Mo.App.1984). The trial court is in a better position not only to assess credibility of witnesses directly, but also their sincerity and character as well as intangibles which may not be reflected in the record. *Webster*, 729 S.W.2d at 65[5].

It follows from what we have said that despite plaintiff's vigorous assertion that his version of the facts is correct, we cannot overturn the judgment of the de novo court on the ground that it believed the wrong witnesses.

There is, however, an even more compelling reason for leaving the judgment undisturbed.

The only theory tendered by plaintiff as a basis for recovery is promissory estoppel. That doctrine has been adopted in Missouri. *Otten v. Otten*, 632 S.W.2d 45, 49 (Mo.App. 1982). Such an estoppel will arise from the making of a promise, assurance, or representation, even though without consideration, where it was intended that the promise, assurance or representation should be relied upon and it was relied upon, and a failure or refusal to enforce it would result in injustice. *In re Jamison's Estate*, 202 S.W.2d 879, 886[13] (Mo.1947). However, such a promise will be enforced only where the promisor should have expected or reasonably foreseen the action which the promisee claims to have taken in reliance upon the promise. *A.L. Huber & Son, Inc. v. Jim Robertson Plumbing, Inc.*, 760 S.W.2d 496, 498[2] (Mo.App.1988); *Otten*, 632 S.W.2d at 49[9].

Mindful of the above principles, we point out that even had the de novo judge believed plaintiff was promised a free automobile for the Colorado trip, all witnesses *including plaintiff* agreed that no free automobile was tendered when plaintiff arrived at defendant's place of business on the first day of the journey. At that point it was clear to all parties that if plaintiff continued on to Colorado he would not be traveling in a free automobile furnished by defendant.

While plaintiff could reasonably argue he drove from his home in Eureka Springs to Springfield in reliance on the promise of a free automobile, it is obvious that plaintiff cannot claim he set forth from Springfield to Colorado in reliance on such a promise.

It may be that had the de novo judge found the promise of a free automobile was made, plaintiff would have been entitled to recover from defendant the expenses plaintiff incurred in driving from Eureka Springs to Springfield to pick it up, as defendant could have reasonably foreseen plaintiff would do exactly that. It may also be that in such circumstances plaintiff would have been entitled to recover from defendant the expenses plaintiff would have incurred in returning to Eureka Springs once plaintiff was told in Springfield there would be no free automobile.

Be that as it may, it is clear that when plaintiff pressed on from Springfield toward Colorado in the Taurus he was not doing so in reliance on the promise of a free automobile. That promise, if indeed it were ever made, had been broken when plaintiff arrived at defendant's place of business. Nothing plaintiff did from that point forward (except perhaps had he returned home) could reasonably be said to have been done in reliance on the promise of a free automobile.

Had plaintiff, a week before the journey, been told by defendant's employees that no free automobile would be supplied, and had plaintiff, faced with that knowledge, commenced the journey in the Taurus instead of renting a more dependable vehicle or utilizing public transportation, it is manifest plaintiff could not have recovered from defendant the cost of the rental vehicles plaintiff was obliged to use when the Taurus failed in Kansas—unless, of course, there was some clause in the warranty on the Taurus or some independent contractual obligation imposing such liability on defendant. No such showing was made at the trial de novo.

We are not oblivious to plaintiff's frustration about the travails he suffered because of the defective Taurus. His anguish is exhaustively catalogued in his brief. It is not for us, however, to regulate defendant's business practices or customer relations. The issue before us in this appeal is simply whether, under the law and the evidence, the de novo judge entered judgment for the wrong party. For the reasons set forth above we cannot say he did.

Judgment affirmed.

GREENE and PREWITT, JJ., concur.